Filed 9/8/16  In re C.G. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re C.G., a Person Coming Under the Juvenile Court Law. | B269536 (Los Angeles County Super. Ct. No. DK13950) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JUSTIN G., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Nichelle L. Blackwell, Commissioner.  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, Tyson B. Nelson, Deputy County  Counsel, for Plaintiff and Respondent.

_____

Justin G. (father) appeals from a dispositional order requiring him to submit to

random drug testing.  Father is the presumed father of the minor, C.G., who was declared a dependent under Welfare and Institutions Code section 300, subdivision (b)[1] based on allegations that H.H. (mother) abused drugs and suffered from mental and emotional problems.  Father contends the court abused its discretion because it dismissed allegations concerning father's marijuana use, and there was no evidence father's medical marijuana use posed any risk to the minor.  We find no abuse of discretion, and affirm the court's order.

## FACTS

Mother and father have had an "on again, off again" relationship.  Father is not C.G.'s biological father, but considers C.G. to be his son.  While mother and father were no longer romantically involved, they were still living at together at a motel when the Department of Children and Family Services (Department) began an investigation in September 2015.  The investigation started after mother was in an argument with a neighbor at the motel, when C.G. was nineteen months old.  Father worked full time, and mother cared for C.G. all day until father returned from work around 7:00 p.m.

Mother was diagnosed three or four years ago with post-traumatic stress disorder, multiple personality disorder, and bipolar disorder.  She was hospitalized as a minor for suicidality and also heard voices telling her to harm her own mother (maternal grandmother).  Mother was on probation for a 2013 robbery conviction and was attending substance abuse and anger management courses as a condition of probation.  Mother reported she was not in therapy or on medications and did not believe in professional help.

Both mother and father initially denied using drugs other than marijuana.  Mother had a current medical marijuana card.  Father's medical marijuana card had expired, but he claimed it had been over a month since he last used marijuana.  After mother's on-

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

demand drug test showed amphetamine, methamphetamine, and marijuana in mother's system, mother acknowledged she had relapsed and started using "crystal meth" about a year earlier. She said controlled substances were easily accessible every day because most of the neighbors in the motel used controlled substances. She claimed she only used methamphetamine late at night out of the motel room, while father was sleeping with C.G. inside. Father acknowledged he was aware of mother's drug use but had not disclosed it earlier out of fear that C.G. would be removed from their custody. Father's drug test showed a low level of marijuana, consistent with his admission that he had used marijuana about a month earlier.

Both parents agreed with the Department that father would be C.G.'s primary caregiver while mother participated in an intensive outpatient substance abuse treatment program, including mandatory random drug testing two to three times a week. Mother moved out of the home voluntarily on October 19, 2015. On October 22, 2015, the Department filed a petition alleging C.G. was at risk of harm based on mother's mental illness and drug use, and father was aware of mother's mental illness and drug use, but permitted mother to live in the home and have unlimited access to C.G. A separate count alleged father's marijuana use placed C.G. at risk. The court detained C.G. from mother, permitting him to remain with father. The court also ordered the Department to provide mother with social services and assess father as a monitor for mother's visits.

According to the Department's jurisdiction and disposition report, father had enrolled C.G. in day care and was adjusting to his role as a single parent. A last minute information report dated December 16, 2015 expressed concern about the parents' lack of compliance with the Department's recommendations and with scheduled appointments, as well as concern that mother may be residing in the home with father again, despite the court's earlier orders detaining C.G. from mother. Father failed to attend a scheduled meeting with a childcare referral specialist on November 25, 2015. He also missed a medical appointment for C.G. on December 3, 2015, and again on December 11, 2015, and was no longer employed. Mother did not appear for a December 2, 2015 drug test.

At a jurisdiction and disposition hearing on December 21, 2015, the court admitted

3

the Department's reports into evidence, together with a physician's recommendation for medical marijuana offered by father. Father testified he obtained the recommendation for medical marijuana on December 19, 2015, after a previous doctor had prescribed him Klonopin for muscle spasms in his back. Father did not want to take Klonopin because it is an unnatural product with a number of potential side effects. He admitted smoking marijuana without a current medical marijuana recommendation. His use of medical marijuana had not caused him to lose a job or caused any fractures with friends or family.

When questioned about the missed medical appointments for C.G., father explained that the appointments were in the early morning, and he did not have information on how to access the building, or a cell phone to contact someone in the building. He now had a new appointment and clear instructions on how to access the building.

The court sustained allegations under section 300, subdivision (b), that C.G. was a dependent child, based on mother's mental illness and drug use, but dismissed the petition allegation that father's marijuana use placed C.G. at risk. At disposition, father's counsel objected to drug testing for father, arguing that reliance on drug test levels is "unsupported by any science before this court that the levels should remain stable." The court ordered six random drug tests, and father's counsel asked what the remedy would be if he were to miss one. The court authorized the Department to walk the matter on and request a full drug rehabilitation program. Father's counsel again objected. The final court-ordered case plan states that if any test is missed or if father's drug test levels increase significantly, the Department can walk the matter on to seek a full drug rehabilitation program.

### DISCUSSION

Father contends the dependency court erred when it ordered random, on-demand drug testing despite striking allegations relating to father's use of marijuana. He also contends it was an abuse of discretion to permit the Department to walk on the matter if

4

the levels of cannabinoids in father's blood tests increased significantly. We find no abuse of discretion.

"'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.' [Citation.]" (*In re A.E.* (2008) 168 Cal.App.4th 1, 4.) "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300." (§ 362, subd. (d).) But the court "is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the [child]. [Citations.]" (*Briana V.* (2015) 236 Cal.App.4th 297, 311.) The court acts within its discretion when its orders are reasonably tailored to advance a child's best interests. (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 187.)

Here, the dispositional orders directed at father were aimed at advancing C.G.'s best interests, and they were not an abuse of discretion. Father testified about his reasons for obtaining a medical marijuana recommendation. Despite intense back pain, father preferred marijuana over unnatural medications like Klonopin to treat his back spasms. He had initially denied mother's drug use, but later admitted he knew she was using methamphetamine at night. He tried to justify the falsehood by explaining he did not want C.G. to be detained. The fact that he would leave a child under the age of two with mother for the entire day, knowing mother had used methamphetamine the night before, calls into question his capacity to measure the extent to which someone under the influence of drugs can safely care for a child. Given father's earlier attempts to deny mother's drug use to avoid having C.G. detained, the court reasonably concluded it was necessary to monitor father's levels. Random drug tests were a reasonable means of ensuring that father's marijuana use was not increasing. The court's purpose in ordering random drug testing was not to establish that father had discontinued using marijuana, but rather that his use remained consistent with its stated medicinal purpose and did not increase to a level which might pose a risk of harm to the child.

5

Father also argues that the court abused its discretion at disposition when it stated that if father missed a test or a drug test showed a significant increase in his levels, the Department could request a full drug rehabilitation program. Father argues that because the Department did not submit any expert testimony about the effect of a drug test showing that father's cannabanoid levels were at 27, any order relating to father's levels is based on speculation and suspicion, rather than evidence. This argument ignores the fact that the record includes drug test results for both father and mother, and father's levels were significantly lower than mother's. Mother's cannabanoid levels changed from 125 on September 17, 2015, to 255 on September 28, 2015, to 166 on October 7, 2015. Father's level of 27 was significantly lower. We do not consider it an abuse of discretion for the court to authorize the Department to request a full drug rehabilitation program if father misses a drug test or if his drug test levels increase significantly, as that order permits both father and the Department adequate flexibility to serve C.G.'s best interests. If it becomes necessary for the court to apply its order at a future hearing, father will have the opportunity to convince the trial court that the rehabilitation program is unnecessary, and, failing that, to argue that the trial court abused its discretion in ordering the program. (*In re Janee J.* (1999) 74 Cal.App.4th 198, 206.)

## DISPOSITION

The court's dispositional orders are affirmed.

KRIEGLER, J.

We concur:

TURNER, P.J.

RAPHAEL, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.