Filed 10/7/20  In re Nathaniel G. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION TWO

| | |
|---|---|
| In re NATHANIEL G., et al., Persons Coming Under the Juvenile Court Law. | B299550 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP01712A-B) |
|     Plaintiff and Respondent. | |
|     v. | |
| CHRISTIAN G., | |
|     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Martha Matthews, Judge and Robin Kessler, Juvenile Court Referee.  Affirmed.

Keiter Appellate Law and Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel for Plaintiff and Respondent.

_____

Appellant Cristian G. (father) appeals from orders establishing dependency jurisdiction over his children, Nathaniel (born 2013) and Evelyn (born 2015), based on father's history of substance abuse and current use of marijuana, and on substance abuse by the children's mother, Martha V. (mother).[1]  Father also challenges the dispositional order requiring him to complete a parenting program.  We affirm the juvenile court's orders.

## BACKGROUND

**Prior child welfare history**

*December 2013*

In December 2013, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging general neglect by mother and emotional abuse by father.  The caller reported that mother was allowing father to remain overnight in the home in violation of a restraining order against him.  The restraining order was issued after an incident of domestic violence in October 2013, during which the maternal grandmother saw father choking mother with one hand while holding a knife in the other hand.  When the maternal grandmother entered the room to remove infant Nathaniel, father released mother and attempted to take Nathaniel from the maternal grandmother.  The maternal grandmother called the police, and father was arrested.

_____

[1]     Mother is not a party to this appeal.

2

The parents denied any physical altercation or that father had brandished a knife against mother. They accused the maternal grandmother of making false accusations. The Department concluded the allegation of emotional abuse was unfounded and the allegation of general neglect was inconclusive.

*January 2014*

The Department received a referral in January 2014 that the maternal grandmother's boyfriend had violated a protective order prohibiting him from contacting the maternal grandmother or from entering her home. The boyfriend reportedly screamed at Nathaniel. Allegations of general neglect and emotional abuse were deemed to be unfounded. Mother agreed to move out of the maternal grandmother's home.

*October 2015*

An October 2015 referral alleged the parents smoked marijuana in the home and hit both children. The responding social worker observed no marks or bruises on the children; however, a subsequent medical exam revealed that Evelyn had an old rib fracture. Neither mother nor father could explain the cause of the fracture.

A non-detention petition was filed on behalf of the children. The juvenile court sustained allegations under Welfare and Institutions Code section 300, subdivision (a),[2] that mother's history of substance abuse, her current abuse of marijuana, and her status as a registered controlled substance offender placed the children at risk of harm; and under subdivision (j), that Evelyn had sustained a subacute rib fracture that would not ordinarily occur absent deliberate, unreasonable, and neglectful

_____

[2] All further statutory references are to the Welfare and Institutions Code.

3

acts by mother and father, placing both children at risk of harm. The parents agreed to participate in a voluntary family maintenance plan from May 2016 to January 2017 that included random drug testing and parenting education. Mother completed a parenting program, tested positive for drugs in June 2016 and failed to participate in any further drug testing. Father was incarcerated in September 2016 and did not drug test or complete a parenting education class.

### *February 7, 2019*

A February 7, 2019 referral alleged general neglect by mother. According to the reporting party, Nathaniel's school had telephoned numerous times but was unable to reach mother. The reporting party stated that mother used drugs and alcohol on a daily basis. The five-day referral was terminated when the responding social worker learned that an immediate response referral was already under investigation.

### *February 11, 2019*

On February 11, 2019, the Department received a referral alleging physical abuse of Nathaniel by mother. The caller witnessed mother cursing and hitting Nathaniel, who was crying. The child had a bruise on his face. The caller reported that mother and the children sleep in a car in a parking lot and that mother smokes something that generates "a lot of white smoke" while the children are in the car. The investigating social worker observed a fading dime-sized bruise on Nathaniel's face. Nathaniel said mother had hit him with a sandal. Mother denied hitting the child and being homeless. The referral was closed as inconclusive.

**Detention and section 300 petition**

The Department received another referral on February 26, 2019, after mother was arrested for inhaling nitrous oxide while standing outside a barbershop. The children were inside the barbershop at the time and were subsequently released to father.

The responding social worker spoke to the maternal grandmother by telephone on February 27, 2019. The maternal grandmother confirmed that mother had been arrested the previous day for being intoxicated while outside a barbershop. The maternal grandmother reported that a few days earlier she found mother in the bathtub in the maternal grandmother's home. Mother was intoxicated and had flooded the bathroom floor. The children were not present during that incident. The maternal grandmother stated that mother no longer lived in, and was no longer allowed in the home. The maternal grandmother further reported that approximately two weeks earlier, mother was intoxicated and verbally assaulted the maternal grandmother in the presence of the children. The maternal grandmother expressed concern about the children's welfare.

The social worker met with father and the children at the paternal grandmother's home on February 27, 2019. Father said he lived in Northern California and happened to be visiting the paternal grandmother at the time of mother's arrest. A friend gave the arresting officer father's telephone number, and the officer called father and released the children to him.

Father said he knew mother smoked marijuana and that he and mother had smoked marijuana when they were a couple. Father said he has smoked marijuana periodically since he was 15 years old and last did so one week earlier. He denied smoking marijuana in the presence of the children.

Father admitted to an incident of domestic violence with mother in 2016. He was arrested and served 11 months of a two-year prison sentence. An active restraining order prohibited father from having contact with mother. Father agreed to drug test and tested negative for all substances on February 28, 2019. He further agreed to voluntarily leave the paternal grandmother's home so the children could be placed there temporarily.

In a February 27, 2019 interview, mother described her arrest as a misunderstanding. She had taken the children to a friend's barbershop for a haircut and had stepped outside when a male sitting in the driver's seat of a parked car began speaking to her. Mother did not know the occupants of the car but asked the driver for a cigarette. She walked away when she saw several police cars arriving at the scene. She denied using nitrous oxide or any illegal substances. Mother also denied being intoxicated in the maternal grandmother's bathtub. She said Evelyn had opened the bathtub faucet and spilled water on the floor, and the maternal grandmother became upset. Mother agreed to drug test on February 28, 2019, but then failed to appear for the test.

Officer Ceja of the Huntington Park Police Department spoke with the social worker about mother's arrest. He said that officers had observed mother inhaling nitrous oxide from a balloon while standing in front of a barbershop on February 26, 2019. Mother's eyes were watery and glassy, and she appeared to be confused. Officer Ceja further stated that he had responded to a call at the maternal grandmother's home two weeks earlier and found mother intoxicated and in the midst of a verbal altercation with the maternal grandmother.

Mother's criminal history included a July 2012 felony conviction for possession of a controlled substance for sale, and an October 2012 misdemeanor conviction for possession of a controlled substance. Father's criminal history included a January 2014 misdemeanor conviction for battery on a spouse and a stay away order from mother and the maternal grandmother, and a September 2016 felony conviction for infliction of injury on a spouse and a criminal protective order protecting mother until September 27, 2026.

The Department filed a petition on behalf of the children on March 15, 2019, alleging, under section 300, subdivision (b), that mother's history of substance abuse and current use of nitrous oxide, marijuana, and alcohol rendered her incapable of providing the children with regular care and supervision; that mother was under the influence of substances while the children were in her care; that mother was a registered controlled substance offender and had drug related criminal convictions; that the children were of such a young age as to require constant care and supervision; that father failed to protect the children from mother's substance abuse; and that mother's substance abuse and father's failure to protect placed the children at risk of serious physical harm. The petition further alleged, under section 300, subdivision (b), that father had a history of substance abuse and was a current user of marijuana, rendering him incapable of providing regular care and supervision of the children; that the children were of such a young age as to require constant care and supervision; and that father's substance abuse interfered with the regular care and supervision of the children, placing them at risk of serious physical harm.

7

Both parents were present at the March 18, 2019 hearing at which the juvenile court ordered the children detained from mother. Over the Department's objection, the court ordered the children released to father. Mother was accorded monitored visits, not to be monitored by father.

**Jurisdiction and disposition**

In May 2019, the Department reported that the children were residing in the paternal grandmother's home with father, the paternal grandmother, and two adult paternal aunts. Father had obtained employment, and the paternal grandmother and aunts helped care for the children while father was at work. The Department reported that the paternal grandmother appeared to be the children's primary caregiver and that the paternal grandmother had requested custody of the children because she "was already doing everything for them."

Father had not enrolled the children in school, as he did not have the children's birth certificates. Father had not, however, sought to obtain the birth certificates, nor had he asked for the Department's assistance in doing so.

The Department expressed concern that father was allowing mother to have unmonitored contact with the children. On March 20, 2019, Nathaniel said he and Evelyn had an overnight visit at mother's home. On April 18, 2019, Nathaniel told the social worker that he was going to mother's home over the weekend. Although father denied that mother had unmonitored visits with the children, the social worker noted that Nathaniel had provided specific details about mother's home and the long drive there.

In a May 2019 last minute information for the court, the Department reported that father was not in compliance with

8

court orders. Father failed to drug test on April 10 and April 29, 2019, and had tested positive for marijuana on April 24, 2019. The Department recommended that the paternal grandmother be appointed as a co-holder of the children's educational rights, as she was in the process of enrolling the children in school.

In a July 2019 last minute information for the court, the Department reported that mother had failed to drug test six times between May 17, 2019 and June 18, 2019. Father failed to drug test on May 22 and June 6, 2019.

The Department continued to express concern that father was allowing mother to have unmonitored contact with the children. On June 20, 2019, mother told the social worker that she was taking the children to the zoo that day. When the social worker explained that a monitor had to be present during the visit and asked mother who would be serving as the monitor, mother became argumentative and cursed. Later that same day, the social worker conducted an unannounced visit at the paternal grandmother's home and found that the children were absent. Father claimed the children were with a cousin.

**Jurisdiction and disposition hearing**

At the July 3, 2019 adjudication hearing, the juvenile court admitted into evidence the Department's reports. Officer Ceja then testified about his interactions with mother while she was intoxicated.

Father's counsel argued that the allegation that father failed to protect the children from mother's substance abuse should be dismissed, because father had been unaware of mother's substance abuse. Father's counsel also asked the court to dismiss the marijuana use allegation for lack of sufficient evidence. The children's counsel joined in father's arguments.

9

The juvenile court then asked the Department to address two issues -- (1) whether father failed to protect the children from mother's substance abuse when he was living in a different part of the state and had taken appropriate action when he learned of the problem, and (2) whether there was a nexus between father's marijuana use and any negative impact on the children. The Department argued that father demonstrated a lack of insight regarding the risk his marijuana use presented to the children, as reflected in his multiple failures to drug test, his positive test for marijuana, and his allowing mother to have unmonitored and overnight visits with the children, in violation of court orders.

The juvenile court dismissed the failure to protect allegation against father but sustained the allegation regarding father's marijuana use. The court noted that father had failed to drug test on multiple occasions and had tested positive for marijuana on the single occasion that he did appear for testing. The juvenile court further noted that the children were both very young, that father's ongoing issue with marijuana put them at risk of harm, and that father had violated court orders prohibiting mother from having unmonitored contact with the children.

The juvenile court then proceeded with the disposition hearing. The court ordered the children removed from mother's custody and released to father. The court ordered family maintenance services for father, including drug testing. The juvenile court further ordered father to enroll in a parenting class, noting that the children were very young, that father had not been their primary caregiver in the past, and that a parenting class would be essential in helping father to assume that role. This appeal followed.

10

**DISCUSSION**

Father contends there was insufficient evidence to support the juvenile court's jurisdictional finding that his marijuana use placed the children at substantial risk of serious physical harm. Father further contends the juvenile court erred by basing its jurisdiction on father's violation of the court order requiring monitored visits between mother and the children -- a ground not alleged in the section 300 petition. Father also challenges the dispositional order requiring him to enroll in a parenting class.

As we discuss, substantial evidence supports the juvenile court's jurisdictional findings, and the order requiring father to complete a parenting class was not an abuse of discretion.

## I. Justiciability

Because mother is not a party to this appeal, and there is no appellate challenge to the jurisdictional findings pertaining to her, we need not address the merits of father's appeal. "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We nevertheless exercise our discretion to consider the merits of father's appeal.

11

## II. Jurisdiction

### A. *Applicable law and standard of review*

Section 300, subdivision (b) authorizes the juvenile court to assume jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child."

We review father's challenge to the sufficiency of the evidence supporting the juvenile court's jurisdictional orders under the substantial evidence standard. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450.) Under that standard, "the issue is whether there is evidence, contradicted or uncontradicted, to support the finding. In making that determination, the reviewing court reviews the record in the light most favorable to the challenged order, resolving conflicts in the evidence in favor of that order, and giving the evidence reasonable inferences. Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court. Evidence from a single witness, even a party, can be sufficient to support the trial court's findings. [Citations.]" (*Id.* at pp. 450-451.)

### B. *Substantial evidence supports the jurisdictional findings*

Substantial evidence supports the juvenile court's jurisdictional findings regarding father's marijuana use. The evidence shows that father had used marijuana since he was 14 or 15 years old and continued to do so. Although father obtained custody of the children on the condition that he continue to test negative for drugs, he failed to appear for testing on April 10, 23,

12

29, May 22, and June 6, 2019. On the single occasion that father did test, he was positive for marijuana.

Father also failed to fulfill his obligations as a parent. He did not enroll the children in school and was often absent from the home. "[O]ne of the most salient manifestations of parental substance abuse" is the ""failure to fulfill major role obligations at . . . home . . . ."" [Citation.]" (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 185.) The paternal grandmother assumed the role of the children's primary caregiver, obtaining the children's birth certificates, enrolling them in school, and becoming a co-holder of their educational rights. The maternal grandmother twice requested custody of the children because she "was already doing everything for them."

That the maternal grandmother and two paternal aunts also lived in the home did not relieve father of his parental obligations or his role as the children's primary caregiver. *In re Jeanette S.* (1979) 94 Cal.App.3d 52, on which father relies, is distinguishable. The appellate court in that case reversed a dispositional order placing a child in the custody of the social services agency, instead of the child's father, but affirmed the orders establishing dependency jurisdiction over the child and removing her from her mother's custody. (*Id.* at pp. 59-60.) The court in *Jeanette S.* reasoned that placing the child with her father, who lived with two adult relatives who were willing to help care for the child if placed in the home, was a reasonable alternative to awarding custody to the social services agency. (*Id.* at pp. 60-61.) In this case, father was granted custody of the children but failed to meet his parental obligations and relied instead on the parental grandmother to assume responsibility as the children's primary caregiver.

13

Father's violation of the order for monitored visitation between mother and the children is further evidence of his failure to fulfill his parental obligations. It also placed the children at substantial risk of harm. Father allowed mother to have unmonitored contact with the children, including overnight and weekend visits, despite her history of substance abuse, her current unresolved substance abuse problems, and her repeated failure to drug test throughout the case. The juvenile court did not err by basing its jurisdiction in part on father's noncompliance with the visitation order. Father had a prior dependency case involving the children and cannot claim to have been unaware of the need to comply with the juvenile court's orders. Father's reliance on non-dependency civil cases (e.g., *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211-211 and *Fuentes v. Tucker* (1947) 31 Cal.2d 1, 4) as support for the argument that he had no notice that his violation of the visitation order could be a basis for the juvenile court's assumption of jurisdiction is unavailing. The juvenile court could consider the totality of the circumstances in determining whether the children were at a substantial risk of harm and jurisdiction was appropriate. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1440.)

Both Nathaniel and Evelyn were children of "tender years," requiring constant supervision and care. Under these circumstances, father's substance abuse problem was prima facie evidence of his inability to provide regular care, resulting in a substantial risk of physical harm. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1385; *In re Drake M.* (2012) 211 Cal.App.4th 754, 766-767.)

14

## III. Dispositional order for parenting education

A dependency court has broad discretion to determine what is in the best interests of a child and to issue an appropriate dispositional order. (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474.) The record here discloses no abuse of discretion.

Father had not previously had sole custody of the children. He had a history with the Department, including a sustained petition involving an unexplained subacute rib fracture sustained by Evelyn. Nathaniel disclosed that father disciplined him by hitting him with a belt on the hand and arm. Although father was supposed to complete a parenting class as part of a 2016 voluntary family maintenance plan, he never did so. The juvenile court did not abuse its discretion by ordering father to complete a parenting program.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT

15