Filed 2/10/22  In re Elena M. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re ELENA M., a Person Coming Under the Juvenile Court Law. | B311120 (Los Angeles County Super. Ct. No. 21CCJP00103A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. S.M. et al., Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County. Nichelle L. Blackwell, Judge Pro Tempore. Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant S.M.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant S.P.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

The juvenile court asserted dependency jurisdiction over infant Elena M. (born 2020) and removed her from the custody of her parents. Both parents appeal: S.P. (mother) argues that there is insufficient evidence to support the juvenile court's finding that her mental illness places Elena at risk; S.M. (father) argues that the juvenile court abused its discretion in ordering that mother have six hours of monitored visitation each week, while he only gets four hours. These arguments lack merit, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Birth of Elena*

In June 2020, Elena was born to father and mother.[1]

#### B. *Domestic violence*

Mother and father have a tumultuous relationship.

---

[1] Father has four children from a prior marriage, but none of them is at issue in this case.

On January 5, 2021, father was driving while mother and Elena sat in the rear seat. When Elena began to cry, mother removed Elena from her car seat and held her in her arms. Upset with Elena's cries, father reached into the backseat—while driving—and punched mother in the face as she held Elena. The punch resulted in a greenish bruise near her eye and a scratch on her cheek.

On January 6, 2021, father pulled Elena from mother's arms and threw items at mother. Mother yelled at father.

These were not the only incidents of violence. Mother reported that father had hurt her in the past, most often triggered by Elena crying. Some of the physical altercations between the parents had occurred in front of Elena.

C. *Mother's mental health*

Mother has been diagnosed with schizophrenia and schizophreniform. At times, mother appears "normal"; this is why her uncle believes she has no mental health issues and why she was found ineligible for an involuntary psychiatric hold in June 2019. Other times, however, mother experiences auditory and visual hallucinations. Between 2018 and 2021, father called Kaiser's mental health crisis hotline four times to report that mother was "crazy," was hearing voices, and was screaming. Mother has told father that she believes he is a ghost, and told social workers that two FBI "spies" who can shapeshift and who appear to her on TV and in social media are "us[ing] satellite[s] to try to steal [her] brain" and that she "yell[s] at them." Father reported that mother screams and yells at Elena through the night, and that this upsets Elena. Despite being diagnosed with serious mental health disorders, mother denies having any

mental health issues and refuses to take medications to address those issues.

## II.    Procedural Background

In January 2021, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Elena on the basis of (1) mother's and father's "history" of domestic violence, as evidenced by the January 5, 2021 incident, (2) mother's and father's conduct in placing Elena in a "detrimental and endangering situation" on January 5, 2021, because mother took Elena out of the car seat while the car was moving and father then attacked mother, and (3) mother's mental and emotional problems. The Department further alleged that this conduct placed Elena at substantial risk of serious physical harm, thereby rendering dependency jurisdiction appropriate under Welfare and Institutions Code section 300, subdivision (b)(1).[2]

In follow-up interviews by the Department, both father and mother—who continued to live together—recanted their prior statements regarding the occurrence of domestic violence as well as mother's unstable mental health.

In March 2021, the juvenile court held a jurisdictional and dispositional hearing. The court sustained all of the allegations in the petition, expressly finding that mother's unaddressed mental health issues put then nine-month-old Elena at risk of harm. The court removed Elena from both parents, and ordered the Department to provide them reunification services consisting of individual counseling, parenting classes, conjoint counseling, and domestic violence programs; as to mother, the court also

---

[2]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

4

ordered mental health counseling, a psychiatric evaluation, and required mother to take all prescribed medications. The court also carried forward its January 2021 order that mother have six hours of weekly monitored visitation and father have four hours of weekly monitored visitation "being [that father] was the domestic violence perpetrator." Father did not object to the visitation order.

Mother and father filed timely appeals.

## DISCUSSION

In this appeal, mother challenges the sufficiency of the evidence supporting the juvenile court's finding that she suffers from mental health issues and that those issues place Elena at substantial risk of serious physical harm and, relatedly, its order requiring her to obtain mental health counseling, to undergo a psychiatric examination and to take all prescribed medications. Father challenges the juvenile court's decision to award him two fewer hours of monitored visitation each week than mother.

## I.     Mother's Challenge to Dependency Jurisdiction

A juvenile court may assert dependency jurisdiction over a child if, among other grounds, the court finds that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the . . . inability of the . . . parent or guardian . . . to provide regular care for the child due to the parent's or guardian's mental illness." (§ 300, subd. (b).) Before jurisdiction may attach under this provision, the Department must prove (1) "neglectful conduct" (in this case, mental illness), (2) causation, (3) "'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820 (*Rocco M.*), quoting § 300, subd. (b)(1); § 355, subd. (a).)

5

Mental illness alone is not enough to demonstrate risk; "something more" is required. (*In re A.G.* (2013) 220 Cal.App.4th 675, 684; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1004.) A "substantial risk of serious physical danger" can be established: (1) by proof of an "identified, specific hazard in the child's environment"; or (2) by the failure to rebut the presumption that "the absence of adequate supervision and care poses an inherent risk to the[] physical health and safety" of "children of . . . tender years." (*Rocco M.*, *supra*, 1 Cal.App.4th at p. 824, italics omitted; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216, 1220.)

We review a juvenile court's finding of dependency jurisdiction for substantial evidence, asking whether the record— when viewed as a whole and drawing all inferences in support of the court's finding—contains ""sufficient facts to support [its jurisdictional] finding[]."" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

We reject mother's challenge to the juvenile court's finding that mother's mental illness warrants the exercise of dependency jurisdiction for two reasons.

First, that issue is not justiciable. Where, as here, dependency jurisdiction over a child rests on several grounds, that jurisdiction is valid if *any* ground is valid. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Consequently, where, as here, mother has attacked only one ground for dependency jurisdiction and leaves others against herself unchallenged, a reviewing court generally has no reason to review that challenge because it will have no effect on the juvenile court's jurisdiction (or even upon mother's status as an "offending" parent). (*Ibid.*; *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 64, 72.) To be sure, a reviewing court may nevertheless agree to review such a challenge if the challenged ground "serves as the basis for

6

dispositional orders that are also challenged on appeal" or "could be prejudicial to the [parent] or could potentially impact the current or future dependency proceedings." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.) But neither exception applies here. In light of the evidence of mother's mental illness in this record and its contribution to placing Elena at risk (as discussed below), the juvenile court would be well within its wide discretion to impose mental health-related orders as part of mother's case plan even if there were no specific jurisdictional finding on that basis. (§ 362, subd. (d); *In re K.T.* (2020) 49 Cal.App.5th 20, 24-25.) And the sole evidence of further prejudice mother articulates is her possible inclusion in the Child Abuse Central Index, but the mental illness finding would have no effect on that inclusion in light of mother's decision not to challenge the domestic violence and endangerment findings.

Second, substantial evidence supports the juvenile court's jurisdictional finding due to mother's unstable mental health in any event.

There is ample evidence of mother's mental illness—a diagnosis of schizophrenia or schizophreniform, multiple reports by father that mother experiences hallucinations, and mother's own statements to the Department's social workers that spies are using social media to "steal [her] brain." Mother points to contrary evidence in the record—namely, that she at some points has lucid moments and appears normal. She also suggests that she got her "far-flung beliefs" due to "exposure to the internet." At bottom, mother is asking us to view the record in the light most favorable *to her* and to ignore all the contrary evidence; substantial evidence review requires that we do precisely the opposite.

7

There is also substantial evidence that mother's mental illness places Elena at substantial risk of serious physical harm. Although mother's mental illness is insufficient by itself to create such a risk, the record here contains that necessary "something more." To begin, Elena is not yet two years old; as a result, she is a child of "tender years" for whom the substantial risk of serious physical danger is presumed. (*Rocco M.*, *supra*, 1 Cal.App.4th at p. 824.) Substantial evidence supports the juvenile court's finding that mother did not rebut that presumption. Although Elena has not yet been physically harmed, a juvenile court need not wait for such harm in order to intervene. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383 [juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction"].) Instead, the continued risk to Elena may be inferred from the fact that mother's mental illness causes her to yell and scream at Elena; mother's conduct keeps Elena up through the night and, more importantly, is a trigger to father's violence; father has engaged in such violence while Elena is in harm's way; and mother and father remain together. These facts establish the requisite "nexus" between mental illness and mother's "failure to ensure [that Elena is] safely cared for and supervised." (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 185.) What is more, mother and father are completely in denial regarding mother's mental illness, which only exacerbates the risk. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision."].)

Mother likens the facts of this case to two other cases where the appellate court overturned a jurisdictional finding on the basis of a parent's mental health—namely, *In re A.L.* (2017)

8

18 Cal.App.5th 1044 (*A.L.*) and *In re Joaquin C.* (2017) 15 Cal.App.5th 537 (*Joaquin C.*). Both cases are inapt. *A.L.* involved a mother who suffered from schizophrenia, but her children were 15 and 11 years old, able to cope with their mother's outbursts, and the mother was addressing her mental illness with medication. (*A.L.*, at pp. 1045-1050.) Elena is still an infant completely dependent upon a mother who is in complete denial about her mental illness. *Joaquin* involved a mother who suffered from a paranoid psychosis with an infant child, but the mother was living with other family members who also cared for the child and the mother was addressing her mental illness with counseling and medication. (*Joaquin C.*, at pp. 562-565.) Here, mother is living only with father, and both mother and father refuse to acknowledge—let alone treat—mother's mental illness.

In sum, we uphold the juvenile court's jurisdictional finding on the basis of mother's mental illness.

## II. Mother's and Father's Challenges to Dispositional Orders

In light of our conclusion that the juvenile court's mental illness-related finding is amply supported, the terms of the dispositional order requiring mother to seek treatment for her mental illness are appropriate.

Father separately challenges the uneven visitation schedule. To begin, father has forfeited this challenge because he did not object when the juvenile court made this ruling. (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1001.) Further, and contrary to what father argues, the juvenile court *did* explain why it awarded father two fewer hours per week of visitation than mother—namely, that father had been the one to put Elena in harm's way during the two incidents in January 2021. This is

a rational distinction, at least at the outset and in the absence of evidence that the additional risk father poses has abated.

**DISPOSITION**

The orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.

HOFFSTADT

We concur:

_____, Acting P. J.

ASHMANN-GERST

_____, J.

CHAVEZ