Filed 11/25/15  Certified for Publication 12/21/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re NATALIE A. et al., Persons Coming Under the Juvenile Court Law. | B261303 |
| | (Los Angeles County Super. Ct. No. DK01396) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
|     Plaintiff and Respondent, | |
|     v. | |
| ROLAND C., | |
|     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Teresa Sullivan, Judge.  Affirmed in part, reversed in part with directions.

Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickman, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Julia Roberson, Associate County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Roland C. (father) appeals a jurisdictional finding and dispositional order in the dependency case of his three children, Natalie, Jocelyn and Jeremiah. All three children were under age six when the events underlying this appeal occurred. Father contends the evidence was insufficient to find he is a current abuser of marijuana. He also argues the juvenile court abused its discretion by ordering him to complete substance abuse related services as part of his dispositional case plan. We conclude father's admitted use of marijuana, his failure to ensure his very young children were adequately supervised, and his absent drug tests all constituted sufficient evidence to support both the jurisdictional finding and the dispositional order.

Father also contends he provided sufficient information of possible Indian heritage to trigger the Indian Child Welfare Act's (ICWA) notice provisions. We agree. Accordingly, we reverse the court's finding in that regard, and remand with directions to comply with ICWA's notice requirements. In all other respects we affirm.

## FACTS AND PROCEDURAL BACKGROUND

At the time of the following events, then five-year-old Natalie, two-year-old Jocelyn and one-year-old Jeremiah were already under dependency court supervision based on sustained allegations concerning their mother's substance abuse and Jeremiah's positive neo-natal toxicology screen for marijuana. The juvenile court had released the children to father, who resided in the paternal grandparents' home at the time. Father had agreed to a case plan requiring, among other things, on demand drug testing upon suspicion of use.

On October 1, 2014, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging that, while in father's care, one-year-old Jeremiah sustained a second degree burn to his hand from an iron. The referring party reported that father left the iron unattended, and Jeremiah burned the palm of his hand after pulling the iron down by its cord.

On October 3, 2014, a social worker went to the paternal grandparents' home to investigate the referral. When she arrived, the social worker found two-year-old Jocelyn and one-year-old Jeremiah at the home without adult supervision. Paternal grandmother's children, 14-year-old Jazmine and 12-year-old Ruben were also home, though Jazmine was sleeping at the time. Ruben reported that father had gone on a trip and paternal grandmother had gone to the store.

Paternal grandmother returned home approximately 40 minutes later. She told the social worker that father left that afternoon for a trip to Las Vegas with friends, and he left the children with her. She did not know when father would return. She said the children were napping when she ran to the store to buy toilet paper, and she did not believe they were "alone" since Jazmine and Ruben were there to watch them.

After father returned from Las Vegas, the Department held a meeting with father, mother and paternal grandmother to address concerns about the children's safety and well-being while in father's care. Father admitted that Jeremiah burned himself on an iron. He said the child pulled the iron's cord when he "turned away for a moment," and he immediately took Jeremiah to the emergency room to have the burn treated. As for leaving Jeremiah and Jocelyn without adult supervision, father agreed it was not appropriate to leave children that age in the care of a 12- and 14-year-old.

When asked if he used drugs or alcohol during his trip to Las Vegas, father admitted that he smoked marijuana. He denied using the drug before or after his trip and agreed to drug test after the meeting. He also agreed to an action plan requiring him to (1) assure the children have adult supervision, (2) be less reliant on paternal grandmother for care of the children, and (3) submit to six clean drug tests.

Father failed to drug test after the meeting. He claimed he was involved in a car accident, which prevented him from testing at the appointed time. A week later, father submitted to a drug test. The sample, however, was too dilute to yield accurate results, as indicated by lower than normal creatinine levels in father's urine.

On October 20, 2014, paternal grandmother called the Department to report that father had left Jocelyn and Jeremiah home alone two days earlier. According to paternal grandmother, she left the younger children with father that morning, while she took Natalie and her children to attend a Halloween party. Later that morning, she received a call from a neighbor, Nicole, who found the family dog roaming outside. Nicole offered to return the dog to paternal grandparents' home. Moments later, Nicole called paternal grandmother again to report that she found two small children alone in the home. Paternal grandmother called father, but he did not answer his phone. Another neighbor, Gus, showed up moments later to retrieve the dog. Gus reported that father had called him and asked him to go to the paternal grandparents' home because father had stepped out, the children were home alone, and a woman was there with the family dog.

Two social workers went to the home to investigate the incident. Father initially said he could not remember what happened over the weekend or whether he stayed home with the children. As the interview went on, father recalled that paternal grandmother woke him on Saturday morning to tell him she was taking Natalie to a Halloween party and leaving the younger children with him. He said he fell back asleep and did not hear anyone knock on the door. He claimed Gus was in the front yard the whole time and the children were never alone. He said he woke up when paternal grandmother called him. He then went downstairs, found the children, and met Nicole outside to thank her for returning the dog. The social workers also interviewed Nicole about the incident. Her account was consistent with paternal grandmother's report.

Based on the foregoing investigation, the Department filed a supplemental petition alleging (1) father neglected the children by leaving them alone for extended periods of time without adult supervision and (2) father was "a current abuser of marijuana" which rendered him incapable of providing regular care for children of such young ages.

On October 31, 2014, the court held a detention hearing on the supplemental petition. Father submitted on the children's detention and requested referrals for services. His counsel represented that father had tried to enroll in a substance abuse program earlier that day, but the treatment center's office was closed. The court found the

4

Department made a prima facie case for detaining the children and ordered father to submit to drug testing.

In advance of the jurisdiction and disposition hearing, the Department interviewed paternal grandmother about father's alleged drug use. Paternal grandmother reported that father began using drugs after the family moved to the Antelope Valley in 2002. Though father did not want to admit he was using drugs, paternal grandmother eventually persuaded him to join a rehabilitation program through her church in San Diego. Father did not do well in the program, and he left the facility after three or four months. He returned to paternal grandparents' home and promised to stay away from drugs. Despite this promise, father had multiple drug-related criminal charges, including charges in 2006 and 2007 for drug possession and charges in 2010 and 2012 for disorderly conduct associated with drug or alcohol intoxication.

During his interview, father initially stated that he did not believe he needed to complete an outpatient substance abuse program. At other points in the interview, he acknowledged he should complete a program, but claimed the programs were too long and would hinder his ability to find a job. Despite representing that he had attempted to enroll in a treatment program at the detention hearing, father still had not enrolled when he was interviewed almost a month later. He maintained that his past drug problems were irrelevant to the current situation with his children.

At the time of the interview, father was living "place to place" because paternal grandmother had expelled him from her home. Father remained unemployed. Though the Department sought to provide him with a bus pass and resources to locate housing and employment, father failed to make further contact with the social worker or to apprise the Department of his whereabouts. The Department also reported that father failed to appear for another drug test on November 18, 2014.

On December 17, 2014, the court held a combined jurisdiction and disposition hearing on the supplemental petition. Father failed to appear. Father's counsel asked the court to dismiss the petition in its entirety. He argued the inadequate supervision allegation stemmed from one-time occurrences and there was no current risk of harm. As

for the drug abuse allegation, father's counsel stressed that father had admitted to smoking marijuana only one time in Las Vegas, and he argued father's missed tests should not be counted against him prior to disposition.

The court directed the Department's counsel to address the substance abuse allegation only. The Department emphasized father's admitted use of marijuana, his dilute urine sample, his other failures to test, and paternal grandmother's statements about father's history of substance abuse. The Department also argued there was a link between father's failure to supervise his youngest children and his substance abuse issues.

The court sustained both allegations in the supplemental petition. With respect to a reunification plan, the court ordered father to attend a full drug and alcohol program with aftercare, random or on-demand drug testing, and a 12-step program with a sponsor and court card.

## DISCUSSION

1. *The Jurisdictional Finding Is Supported by Substantial Evidence*

Father contends the evidence was insufficient to sustain the drug abuse count under the standard announced by this court in *In re Drake M.* (2012) 211 Cal.App.4th 754 (*Drake M.*). He contends the "only evidence" of his marijuana use was his admission concerning his trip to Las Vegas. He also stresses that he has not tested positive for marijuana during the course of this case. He argues there was no evidence to find he is a "current abuser of marijuana." We disagree.

"The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (Wel. & Inst. Code, § 300.2.)[1] Thus, section 300, subdivision (b), creates juvenile court jurisdiction where it is shown that a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

the failure or inability of his or her parent . . . to adequately supervise or protect the child, . . . or the willful or negligent failure of the child's parent . . . to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse."

"In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A*. (1996) 52 Cal.App.4th 183, 193.)

We begin with father's contention that the evidence was insufficient to find he is a "current abuser of marijuana" under our opinion in *Drake M., supra,* 211 Cal.App.4th 754. In *Drake M.*, we reaffirmed that "the mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found" (*id.* at p. 764), and held that "a finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to . . . establish that the parent or guardian at issue has a current substance abuse problem as defined in the [American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000 (DSM-IV-TR)]" (*id.* at p. 766). We quoted "[t]he full definition of 'substance abuse' found in the DSM-IV-TR[,] [which] describes the condition as '[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12-month period: [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[; ¶] (3) recurrent

7

substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights).' " (*Ibid.*, quoting DSM-IV-TR, p. 199.) We concluded the evidence was insufficient to establish that the father's use of prescribed medical marijuana to treat his chronic knee pain constituted "substance abuse" under this definition. In so concluding, we relied on undisputed evidence showing that the father had been employed for many years, had no criminal history, and did not operate a motor vehicle or care for the child within a minimum of four hours after ingesting marijuana. (*Id.* at pp. 767-768.)

Unlike *Drake M.*, substantial evidence in this case supports the juvenile court's finding that father is a substance abuser. Indeed, the evidence suggests one of the most salient manifestation of parental substance abuse is present here—father's drug use has resulted in " 'a failure to fulfill major role obligations at . . . home (e.g., . . . neglect of children or household) . . . .' " (*Drake M., supra,* 211 Cal.App.4th at p. 766, quoting DSM-IV-TR, p. 199.) Based on the evidence, the juvenile court could reasonably have inferred a nexus between father's drug use and his failure to ensure his young children were safely cared for and supervised. It is undisputed that when father went on a trip to Las Vegas to smoke marijuana with his friends, he left his children with the paternal grandparents, who then left two-year-old Jocelyn and one-year-old Jeremiah at the home without adult supervision. (See § 300, subd. (b) [authorizing jurisdiction where parent has failed to "adequately supervise or protect the child from the conduct of the custodian with whom the child has been left"].) Apart from this incident, there is evidence of father's repeated failures to fulfill major role obligations, including father's continued unemployment, his transient living situation, and his failure to enroll in drug treatment programs as agreed to with the Department. Taken together, the court could reasonably conclude based on this evidence that father's abuse of marijuana contributed to his failure to adequately supervise his children. (See *Drake M.,* at p. 767 [where children are " 'of such tender years that the absence of adequate supervision and care poses an inherent risk

8

to their physical health and safety,' " a "finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm"].)

Moreover, the record contains only one drug test by father, which was effectively inconclusive because father provided a dilute urine sample. Father failed to show for every other drug test he was ordered to take. Thus, unlike in *Drake M.*, where the father "stated that he was willing to do whatever was necessary to prevent Drake's removal from his custody . . . [and] agreed to take on-demand drug screens" (*Drake M., supra,* 211 Cal.App.4th at p. 759), here, a reasonable inference could be drawn that father's marijuana use was more frequent than the one admitted instance in Las Vegas. Father's past substance abuse and failure to complete a drug treatment program readily bolster this inference. All told, the record amply supports the juvenile court's finding that father is an abuser of marijuana and that his abuse of the drug has affected his ability to adequately care for his very young children.

2. *The Disposition Order Was a Reasonable Exercise of Discretion*

Based largely on his contentions concerning the drug abuse finding, father argues the juvenile court abused its discretion by ordering him to participate in drug testing and a treatment program. Having determined the jurisdictional finding is supported by substantial evidence, we also conclude the court acted within its discretion by ordering services to address father's drug abuse and the harm it posed to his children.

"The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion." (*In re Baby Boy H*. (1998) 63 Cal.App.4th 470, 474.) In reviewing an order for abuse of discretion, we " 'must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling. [Citation.] The precise test is whether any rational trier of fact could conclude that the trial court order advanced the best interests of the child.' " (*In re Robert L*. (1993) 21 Cal.App.4th 1057,

9

1067.)  "The trial court is accorded wide discretion and its determination will not be disturbed on appeal absent 'a manifest showing of abuse.'  [Citation.]"  (*Ibid.*)

We have no trouble concluding that the juvenile court's disposition order constituted a reasonable exercise of discretion, rationally tailored to advancing the dependent children's best interests.  As we explained, the evidence established that father's marijuana abuse posed a substantial risk to the children in light of their very young ages.  And, while father continues to deny he currently uses marijuana, he has repeatedly failed to submit to a drug test or to complete treatment for his past and current substance abuse issues.  On this record, the juvenile court reasonably concluded that drug testing and treatment programs were necessary to eliminate the conditions that led to the children's dependency status.  (See § 362, subd. (d).)  We find no abuse of discretion.

3.      *The Juvenile Court Is Directed to Comply with ICWA Notice Requirements*

When the Department filed its original petition concerning mother's substance abuse, both mother and father indicated to the Department that they had Indian heritage. The original detention report indicates that mother informed the Department that her parents were part of the Cherokee tribe.  At the detention hearing, father submitted an ICWA form indicating that unidentified cousins and uncles were registered members of the Chumash tribe.  Based on the parents' representations, the juvenile court ordered the Department to investigate the claims.

Two months later, the Department reported on interviews it had with paternal grandmother and maternal grandmother concerning their respective family's Indian heritage.  Consistent with the parents' representations, paternal grandmother indicated her family had Chumash heritage, while maternal grandmother reported her father was full or half Cherokee.  At the adjudication hearing on the original petition, the court addressed the outstanding ICWA issues.  While the court directed the Department to continue investigating mother's claimed Indian ancestry, it reasoned that no further investigation or notice was required concerning father's claim because the children were to remain in his custody.

10

The Department sent ICWA notices to the Cherokee tribes, the Bureau of Indian Affairs, and the Secretary of the Interior concerning mother's claimed Indian heritage. After receiving progress reports from the Department concerning these ICWA notices, the court found that it had no reason to know the children were Indian children as defined by ICWA.

Subsequent to the court's ICWA finding, the Department filed its supplemental petition concerning father's failure to supervise the children and marijuana abuse. Though the detention report again noted that father informed the Department he may have Indian heritage, the court did not address the issue at the detention hearing and the record does not indicate that father's possible Indian heritage was addressed at any hearing thereafter.

Father claims, and the Department concedes, that the information he provided to the court and the Department concerning his possible Chumash heritage was sufficient to trigger ICWA's notice requirements. We too agree. However, under these circumstances the appropriate remedy is not to reverse the jurisdictional findings, but rather to remand the matter to the juvenile court to comply with ICWA's notice requirements. (See *In re Christian P*. (2012) 208 Cal.App.4th 437, 452-453.) At this time, there is not a sufficient showing that Natalie, Jocelyn, and Jeremiah are, in fact, Indian children as defined by ICWA. If, after proper notice, a tribe claims the children are Indian children, the interested parties can petition the juvenile court to invalidate any orders that violated ICWA. However, if "no tribe makes such claim, prior defective notice becomes harmless error." (*Id.* at p. 453; see also *In re Damian C*. (2009) 178 Cal.App.4th 192, 199-200.) Accordingly, we will reverse the court's earlier ICWA finding to the extent it relates to the children's possible Indian heritage through father's lineage and remand with directions to issue ICWA notices concerning father's claimed Indian heritage.

## DISPOSITION

The jurisdictional finding and disposition order are affirmed.  The ICWA finding is reversed to the extent it relates to the children's possible Indian heritage through father's lineage, and the juvenile court is directed to order the Department to complete the ICWA inquiry and notice concerning father's claimed Indian heritage.


JONES, J. [*]

We concur:


ALDRICH, Acting P. J.


LAVIN, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 12/21/15

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re NATALIE A. et al., Persons Coming Under the Juvenile Court Law. | B261303 |
| | (Los Angeles County Super. Ct. No. DK01396) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION [NO CHANGE IN JUDGMENT] |
| Plaintiff and Respondent, | |
| v. | |
| ROLAND C., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed on November 25, 2015, was not certified for publication in the Official Reports. For good cause it now appears that this opinion should be published in the Official Reports with the exception of part 3 of the Discussion.

[There is no change in the judgment.]


_____      _____      _____

ALDRICH, J, Acting P. J.          LAVIN, J.                    JONES, J.*

_____

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1