Filed 1/26/23  In re A.M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | B314655 |
| _____ | (Los Angeles County Super. Ct. No. 20LJJP00708) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| M.H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore. Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Avedis Koutoujian, Deputy County Counsel, for Plaintiff and Respondent.

M.H. (Mother) appeals from a dispositional order of the juvenile court in dependency proceedings regarding her daughter, A.M. (born March 2007), to the extent the order requires Mother to take classes regarding parenting a special needs child and to participate in a National Alliance on Mental Illness (NAMI) support group.  Mother acknowledges that A.M. has special needs and that Mother has struggled to handle these and the behavioral issues they have caused during the brief time Mother has spent with A.M.  She nevertheless argues the parenting classes and support group are "duplicative" of the other services in her case plan, and that the court erred in requiring them.  We conclude the court did not abuse its discretion and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Mother's Child Welfare History and Prior Dependency Proceedings*

Mother has a history with the Los Angeles County Department of Children and Family Services (DCFS), including dependency proceedings based on sustained allegations in a Welfare and Institutions Code section 300 petition[1] that Mother had left her one-year-old child (not A.M.)[2] with an unrelated stranger who was unwilling to continue caring for the child.  The child was subsequently adopted.

In August 2013, DCFS received a referral alleging that Mother physically abused A.M., and that A.M. had witnessed

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2] The child is not a party to the instant appeal or the underlying dependency proceedings.  It is unclear from the record whether the child was A.M.'s sibling or half sibling.

sexual acts and been sexually molested.  The referral also alleged Mother was a prostitute and abusing drugs.  DCFS "[e]valuated [o]ut" the referral because it was "[h]istorical abuse in Texas by [M]other, about [five] years ago, who no longer ha[d] custody, and ha[d] no visits with [A.M.]"

## B.    *Investigation and Section 300 Petition Leading to Current Dependency Proceedings*

In October 2020, DCFS received a referral that A.M.'s father, J.M. (Father), who is not a party to this appeal, had left then 13-year-old A.M. unsupervised, sold her medication for attention deficit and hyperactivity disorder (ADHD), did not ensure A.M. attended school, and smoked marijuana in the home.

During its investigation, DCFS learned that many years earlier, when A.M. was two years old, A.M. had been placed in the custody of her paternal aunt, who at some point had also become A.M.'s legal guardian.  The record is unclear as to the circumstances leading to this arrangement.  A.M. only started living with Father in approximately September 2020, after an unknown male sexually abused A.M. while she was in paternal aunt's care, and A.M. ran away.  Around this same time, the paternal aunt terminated the guardianship.

Following A.M.'s relocation to Father's home, A.M. exhibited runaway behavior.  A.M. was hospitalized due to threats of self-harm, and subsequently released back to Father's care.  A.M. had diagnoses of post-traumatic stress disorder, ADHD, alcohol-related neurodevelopmental disorder, and oppositional defiant disorder, had been "prescribed Ritalin and Prozac, . . . [and] ha[d] a history of running away, self[-]harm, hospitalizations, . . . and ha[d] been a victim of sexual abuse [in] two incidences."  Other reports indicated she was bipolar,

3

had "anger issues," and that she functioned at the level of an eight-year-old.

Father reached out to DCFS and reported an inability to adequately care for A.M. and her special needs. He reported that A.M. repeatedly ran away, sometimes slept in the backyard with her therapy dog, and had on one occasion taken her eight-year-old half sister to the park without permission and left her there.

In November 2020, DCFS filed a section 300 petition, alleging, in part, that Father had limited ability to care for A.M. on account of her special needs. At the time, Mother's whereabouts were unknown, and Mother was not named in the petition. The court detained A.M. and released her back into Father's care.

DCFS subsequently found Mother, who stated she had not seen A.M. since the child was three years old. Mother reported difficulty maintaining contact with A.M. since paternal aunt had become A.M.'s caregiver, because the paternal aunt had obtained a restraining order against Mother.

In January 2021, the court sustained the allegations in the petition finding Father's failure to care for A.M. placed A.M. at substantial risk of harm given her special needs. The court removed the child from Mother's custody, and ordered A.M. to remain in Father's care. The court ordered unmonitored video visits between Mother and A.M., as well as family maintenance for Father and enhancement services for Mother. Mother's services included classes on parenting special needs children and conjoint counseling with A.M. Mother objected to being required to complete the parenting program.

### C. *Mother's Failed Extended Visit with A.M.*

In March 2021, the court granted a DCFS request that the court approve an extended visit for A.M. with Mother in Arizona. Mother returned A.M. to DCFS's care six days into the 10-day visit, however, and refused to provide further care for A.M., because A.M. had been "disrespectful and rude." Mother later informed DCFS, " 'I didn't believe it ([A.M.]'s issues) until she came here and I had a hard time dealing with it. . . . There's only so much I can do, she needs help. . . . I haven't talked to [A.M.] since I gave her back. . . . I just didn't want to deal with it and that's the way I shut down.' " Father likewise refused to allow A.M. to return to his care following the unsuccessful extended visit with Mother. Father had expressed regularly that he was not able to care for A.M., due to her mental health issues, and had on more than one occasion requested she be institutionalized. DCFS placed A.M. in foster care.

### D. *Sections 342 and 387 Petitions*

In April 2021, DCFS filed sections 342 and 387 petitions, alleging that both parents requested A.M. be removed from their care and were unwilling and unable to care for A.M. The juvenile court ordered A.M. detained from both parents and ordered monitored virtual visitation. A.M. remained in foster care.

DCFS reported an improvement in A.M.'s behaviors in her foster care placement, concurrent with her participating in mental health and medical services that she had refused to participate in when living at home with Father. DCFS further reported that Mother did not want to be involved in the proceedings and had stated A.M. "was not her problem."

On July 27, 2021, the juvenile court found all the allegations in the sections 342 and 387 petitions true as

amended, sustaining them with interlineations to indicate both parents were unable but not "unwilling" to provide appropriate care for A.M., and that both had requested A.M. not be placed in their care. The juvenile court stated "[i]t is clear that [A.M.] has special and unique needs, and it is also clear to this court that the mother and father are unable to provide for her care. . . . They both have been given an opportunity, and she requires an extraordinary amount of treatment, and the parent needs to participate in treatment as well in order to be able to deal with her unique and special needs."

As to the disposition phase of the hearing, the juvenile court removed A.M. from both parents' custody and ordered family reunification services for both parents. Mother's trial counsel objected to DCFS's recommendation that her case plan include a parenting class and participation in a NAMI support group. Mother's counsel suggested Mother participate in only "counseling or even conjoint counseling."

The case plan ultimately adopted by the court included Mother's participation in classes on parenting special needs children, conjoint counseling with A.M., a NAMI support group, and individual counseling to address case issues, including parenting, effective coparenting, and children with mental health issues. The court ordered online and in-state referrals be provided to Mother. The court stated it was ordering classes in parenting for special needs children "so that the unique needs of [A.M.] and how to parent her can be addressed in a program." The court also noted "NAMI is nationwide, and so the mother should be able to participate in that support group where she resides."

On August 18, 2021, mother filed a notice of appeal from

6

the jurisdiction/disposition order.

## DISCUSSION

On appeal, Mother argues the court reversibly erred by including what she describes as "an overbroad case plan" in the July 27, 2021 dispositional order.[3] (Capitalization omitted.) Mother argues that the "case plan was duplicative" because the court ordered a support group and a parenting class that addressed special needs children despite also ordering "case issues" and "the same issues" be addressed respectively as part of Mother's individual counseling, "to which mother had no objection."

At disposition, a juvenile court "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." (§ 362, subd. (a).) " 'The juvenile court has broad discretion to determine what

---

[3] We disagree with DCFS's contention that because Mother did not timely appeal an earlier (January 2021) dispositional order that also required parenting classes and counseling for Mother, this court is without jurisdiction to consider an appeal challenging the inclusion of parenting classes and counseling in the July 27, 2021 order. The appealed from July 27, 2021 order provides the operative case plan for Mother and replaced the January 2021 order. Her failure to appeal the former does not affect our jurisdiction to hear an appeal from the latter. Moreover, Mother's appeal does not challenge the parenting classes and counseling in a vacuum, but rather as *components* of the July 27, 2021 case plan; Mother claims that total case plan is overbroad. The January 2021 case plan included a different total list of services for Mother. Therefore, Mother could not have raised her current argument via an appeal from the earlier dispositional order, and her failure to do so cannot have forfeited the argument.

7

would best serve and protect the child's interests and to fashion a dispositional order accordingly.  On appeal, this determination cannot be reversed absent a clear abuse of discretion.' " (*In re A.E.* (2008) 168 Cal.App.4th 1, 4.)

The record supports that A.M. has serious mental health, emotional, and behavioral issues that, at least as of the date of the challenged dispositional order, Mother was not capable of handling.  Mother admitted she was unable to care for A.M. due to A.M.'s special needs and behavioral issues, and that she did not fully understand these issues.  She also demonstrated her inability to parent A.M. by abandoning her extended visit with A.M. after only six days and thereafter refusing to have A.M. in her care.

Mother does not dispute any of this on appeal, but instead argues the court abused its discretion by ordering her to address her admitted inability in more than one way—that is, through participation in not only counseling, but special needs parenting classes and a support group.  But given the severity of A.M.'s issues, Mother's history with A.M., and Mother's DCFS history, it was both reasonable and appropriate to require Mother to use multiple modalities in developing the ability to handle, understand, and address A.M.'s special needs.  (See *In re Nolan W.* (2009) 45 Cal.4th 1217, 1229 [" '[t]he reunification plan " 'must be appropriate for each family and be based on the unique facts relating to that family' " ' "].)  Moreover, although the various modalities the court ordered Mother to participate in may all have the same goal—helping Mother develop the ability to care appropriately for A.M.—that does not mean they are duplicative.  A parenting instruction program for parents of special needs children would help Mother achieve this goal

in a different way than would individual therapy sessions or participation in a NAMI support group. One teaches skills; another offers Mother emotional support, given that parenting a special needs child—even after one learns the necessary skills—is inherently challenging. The other can assist Mother to work through her own issues and the traumas of past unsuccessful efforts to parent A.M. Mother does not and cannot argue that these various services would not assist Mother in such nonoverlapping ways; nor does she argue that she does not need any of these types of assistance. The court's dispositional order was "rationally tailored to advancing [A.M.]'s best interests" (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 187), and Mother has not identified anything suggesting otherwise. There was no abuse of discretion.

## DISPOSITION

The order of the juvenile court is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



BENDIX, J.