Filed 9/20/24  In re Amanda A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re Amanda A., a Person Coming Under the Juvenile Court Law. | D084041 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ15973) |
| v. | |
| ARMANDO T., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Harry M. Elias, Judge.  (Retired Judge of the San Diego Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Lelah S. Forrey-Baker, under appointment by the Court of Appeal, for Minor.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

Armando T. (Father) appeals from the juvenile court's April 19, 2024 order denying him custody of his 10-year-old daughter Amanda A. Following a multi-day, contested jurisdictional/dispositional hearing, the court found it was in Amanda's best interest to remain temporarily in foster care rather than be placed out of state with Father. The court reached its decision after finding (1) Amanda and Father had not had a relationship for years; (2) she experienced emotional distress when he contacted or attempted to visit her; (3) she was traumatized by her stepfather's sexual abuse; and (4) she struggled in previous placements away from her mother and stepbrother. To build their relationship, the court ordered additional services for Amanda and Father, including conjoint therapy and increased visitation.

On appeal, Father contends the juvenile court (1) *may* have applied the wrong legal standard when it found it would be "detrimental" to place Amanda with Father; (2) the evidence was insufficient to support the court's placement decision; and (3) Amanda should have been placed with him.

As we explain, we conclude (1) the juvenile court correctly considered Amanda's best interest in making its placement decision; (2) its decision to wait to place Amanda with Father was a proper exercise of discretion; and (3) its reasoning to defer this placement is supported by substantial evidence. We thus affirm the order.

I.

In November 2023, San Diego County Health and Human Services Agency filed a petition on behalf of Amanda under Welfare and Institutions Code section 300, subdivision (d). The petition alleged (1) Amanda had been

2

sexually abused by her stepfather (Stepfather), and (2) Amanda's mother (Mother) had allowed Stepfather back into the family home when Amanda was present, in violation of a restraining order.

Mother and Father were romantically involved for only a short time. Amanda last spoke with Father about two years before dependency.

Father lives in Ohio and has five children in total. He wanted shared custody of, and a relationship with, Amanda, which he claimed Mother and Stepfather prevented. After learning of the sexual abuse allegations, Father requested placement of Amanda.

In mid-November 2023, Father filed a petition for custody and a request for an emergency order for placement in his home. The Agency recommended Amanda be detained with Mother, conditioned on her following the restraining order that required Stepfather to stay away from, and have no contact with, Amanda. Father opposed the recommendation.

At the contested detention hearing, the juvenile court (1) found the Agency met its burden; (2) detained Amanda in out-of-home care, after finding Mother allowed Stepfather back into the family home and likely coached Amanda against establishing a relationship with Father; and (3) ordered supervised visitation for Mother and Father. The court (1) denied Father's request for presumed father status, ruling he was Amanda's "biological father"; and (2) found detention with Father was not in Amanda's best interest because she had met him only a few times and it would "only add to her trauma" if she was required to move across the country and away from Mother, her half-brother, and other family members.

At the time of the jurisdiction/disposition hearing, Amanda was detained in a licensed foster home. She refused to speak on the telephone or have in-person visits with Father. Amanda's caregivers reported Mother

(1) did not want Amanda speaking to Father and (2) told them Amanda did not want to speak to him, either. When Amanda and Father did speak, she ignored him and cried. During Agency interviews, Amanda blamed Father for "never" being there for her and for abandoning her and Mother.

The Agency's initial report recommended Amanda remain in out-of-home care under the juvenile court's supervision. The Agency had not yet completed its investigation of Father and believed he needed to "rebuild" his relationship with Amanda. Amanda told her therapist Father's calls annoyed her as she did not want to speak to him. Father acknowledged Amanda was not yet comfortable and needed time to work on the relationship.

In March 2024, shortly before the contested jurisdiction/disposition hearing, the Agency changed its recommendation and suggested the juvenile court place Amanda with Father, issue exit orders, and terminate jurisdiction. The Agency commended Father for his efforts to develop a relationship with Amanda, completed its investigation of Father's criminal and child welfare histories, and concluded he could provide Amanda with a safe and stable home environment.

Amanda's school psychologist, an expert in child psychology, an Agency social worker, and Father testified at the contested jurisdiction/disposition hearing that it was in Amanda's best interest to be placed with Father. The maternal grandfather (Grandfather)—who also requested placement and claimed to have a close relationship with Amanda—testified placement with Father was premature, as he witnessed her being "very stressed" and crying during a recent visit with Father. Grandfather believed Amanda would suffer serious emotional harm if separated from her family in San Diego County.

Mother testified Amanda should not be placed with Father. Mother claimed Father had raped her and had not wanted Amanda to be born. Mother shared these statements with Amanda after Amanda disclosed Stepfather's sexual abuse.

Amanda's stipulated testimony showed she strongly objected to placement with Father. Amanda's guardian ad litem (GAL) also opposed the placement, noting Amanda needed more time and therapeutic intervention. Contrary to Amanda's wishes, the GAL recommended a true finding on the petition and asked the juvenile court to place Amanda in Riverside with Grandfather while she and Father underwent conjoint therapy.

The juvenile court found the petition true, declared Amanda a dependent, and removed her from Mother's care pursuant to section 361, subdivision (c)(1). It also found (1) Mother played a "significant role" in undermining the relationship between Amanda and Father and (2) a change in placement would be made in the near future, but (3) it was not then in Amanda's best interest to place her with Father, as she may suffer an "emotional and psychological" setback. The court asked Father to be patient a "little bit longer." It ordered (1) Amanda to remain in foster care, (2) the Agency or a neutral third party to supervise visits between her and Mother, and (3) increased visits between Amanda and Father and participation in conjoint therapy.

## II.

### A.

Father asserts the juvenile court *may* have used the wrong legal standard in denying him custody of Amanda, claiming the court apparently relied on section 361.2(a), which requires the juvenile court to place a dependent child with a noncustodial, nonoffending parent requesting custody

unless the placement would be "detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2(a).) However, section 361.2(a) only applies to a presumed father (*In re Zacharia D.* (1993) 6 Cal.4th 435, 454), and the court denied Father's request for presumed father status, instead finding Father to be the biological father. Father thus contends the court erred in applying language from section 361.2(a) to find it would be "detrimental" to place Amanda with him. We find no error.

The record shows the juvenile court repeatedly referred to Amanda's best interest when making its placement decision. In addition, Amanda's GAL and the Agency also recognized the best interest standard applied. And the court itself recognized that "all its findings are made with [Amanda's] best interest, both physical[,] emotional, and psychological," in mind, and it reiterated Amanda's "best interest" was its "ultimate priority."

We conclude the juvenile court's statement that it would be "detrimental to place Amanda with [Father] right now," out of fear she may suffer "an emotional or psychological" setback, was made in the context of determining Amanda's best interest. The juvenile court's express reliance on our decision in *In re A.J.* (2013) 214 Cal.App.4th 525, 536 (*A.J.*)—where we recognized the "'fundamental premise of dependency law is to serve the best interests of the dependent child'" and, "consistent with this foundational principle," "'"[t]he juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion"'"—supports our conclusion that the court applied the proper legal standard when making its dispositional order.

B.

Father next contends there is a lack of substantial evidence to support the juvenile court's finding it was in Amanda's best interest to remain in

6

foster care while he and Amanda strengthened their relationship. We disagree.

The evidence shows that, throughout dependency, Amanda (1) repeatedly refused to talk with Father and cried when he called; (2) refused to recognize Father as her real or biological father; (3) repeatedly told her school psychologist and Agency social workers he was "creepy" and she did not want to be around him; (4) refused to look at photographs he sent or have in-person visits with him; and (5) became "very stressed," to the point her emotional and psychological wellbeing were impacted, when possible placement with Father came up.

The evidence also shows (1) Father had not had a relationship with Amanda for years, and (2) Mother played a "significant role" in undermining that relationship because she and Father did not get along. In addition, Amanda's GAL (1) reported Amanda did not want to be placed with Father and, (2) like Grandfather, expressed concern for Amanda's wellbeing if placed with Father. The GAL nonetheless recognized placement with Father might be in Amanda's best interest once they developed their relationship. Finally, Amanda strongly opposed placement with Father in her stipulated testimony.

In light of this evidence, we conclude the juvenile court properly exercised its "broad discretion" in finding it in Amanda's best interest to remain in foster care while her relationship with Father continued to grow—without Mother's interference—through court-ordered therapy and Agency services. (See *A.J.*, 214 Cal.App.4th at p. 536.) That there was evidence before the juvenile court that might have supported a different result does not warrant reversal. (See *In re Natalie A.* (2015) 243 Cal.App.4th 178, 186-187.)

## III.

We affirm the juvenile court's April 19, 2024 order.

CASTILLO, J.

WE CONCUR:

McCONNELL, P. J.

KELETY, J.