Filed 3/17/25  In re A.A, CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re A.A. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. V.A., Defendant and Appellant. | G064517 (Super. Ct. Nos. DP018149-002, 24DP0593, 24DP0594) O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Robert Goodkin, Judge. Dismissed in part and affirmed in part. Motions for judicial notice. Granted. Motion to Dismiss. Granted in part and denied in part.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

\*　　　\*　　　\*

V.A. (Mother) appeals from the juvenile court's jurisdiction and disposition orders as to her three children: A.A., B.A., and J.A. (collectively, the Minors). (Welf. & Inst. Code, § 300 et seq.)[1] The court removed the Minors from Mother's custody. Custody of B.A. and J.A. was vested with their father under family maintenance supervision, and their half sister, A.A., was placed with foster parents, with reunification services (including visitation) provided to Mother. Mother's sole contention on appeal is that the approved case plan was deficient in that it did not specifically address the Minors' refusal of visitation or mention conjoint counseling or therapeutic visitation.

While this appeal was pending, the juvenile court terminated its jurisdiction as to B.A. and J.A., vesting legal and physical custody of them to their father. We invited the parties to address the impact of the court's termination of jurisdiction. We conclude the appeal is moot as to B.A. and J.A., decline to exercise our discretion to address Mother's challenges to the disposition orders, and dismiss the appeal.

As to A.A., we affirm the order. Because Mother failed to specifically object below that the case plan was deficient, we conclude she has forfeited this claim on appeal. Even if the issue had not been forfeited, we

---

[1] All statutory citations are to the Welfare and Institutions Code unless otherwise stated.

2

would have concluded the juvenile court did not abuse its discretion.

## FACTS

When the underlying proceedings began in May 2024, Mother had full custody of her three children: daughter A.A., then age 16; daughter B.A., then age 11; and son J.A., then age 10. B.A. and J.A. share the same father, who lives in Georgia and visited them twice a month. A.A.'s father was not involved in her life and did not participate in the proceedings.

The family first came to the attention of the Orange County Social Services Agency (SSA) in 2009, due to a prior child welfare case for A.A., who had been removed from Mother's care due to allegations of physical abuse by Mother's then-boyfriend and Mother's failure to protect. In 2011, Mother regained custody of A.A.

In 2015, a new allegation of physical abuse by Mother against A.A. was deemed unfounded. In 2016, an allegation of general neglect was substantiated as to J.A.'s father due to domestic violence against Mother. In 2017, Mother was awarded custody of B.A. and J.A., and their father was granted visitation. In 2022, Mother reported A.A. had run away from home after being caught smoking marijuana, while A.A. stated she left because she was afraid Mother would hit her. The allegation of physical abuse of A.A. was deemed inconclusive.

In April 2024, B.A. and J.A. reported that Mother had a history of hitting them, that she had burned them with an iron on the back of their knees, and that she verbally abuses them, resulting in the Minors' removal via protective custody warrant. They were placed together with A.A.'s former foster parents. According to the Minors, when Mother said goodbye to them, she whispered in Spanish, "Why are you crying if this is what you wanted?" Mother denied saying that.

3

In May, SSA filed a petition on the Minors' behalf, as amended by interlineation in July 2024 (the petition). The petition alleged the Minors came within the court's jurisdiction under section 300 due to physical harm, failure to protect, serious emotional damage, no provision for support of A.A. only, and sibling abuse/neglect as to B.A. and J.A. only. (§ 300, subds. (a), (b)(1), (c), (g), & (j).)

The petition alleged the following facts in support of jurisdiction. Mother physically abused the Minors, including by hitting them with a belt several times, causing bruises. Mother verbally and emotionally abused them, including by calling A.A. stupid, "not worth it," and "ungrateful," and B.A. good for nothing. Mother had told the Minors not to say anything to the social worker. The Minors all reported being afraid of Mother. The father of B.A. and J.A. failed to protect the children after learning in 2024 of Mother's abuse.

The petition cited prior incidents known to SSA, including Mother's failure to protect A.A. from physical abuse by Mother's boyfriend in 2009 and the 2016 arrest of B.A. and J.A.'s father for pushing Mother. The petition further noted Mother has a criminal history of driving without a valid license and A.A.'s father has a criminal history for controlled substance violations.

At the initial petition and detention hearing on May 7, 2024, the juvenile court found the Minors fell under section 300 and vested temporary placement and care with SSA. The court granted counseling for the Minors. For Mother, the court authorized telephonic contact with the Minors and possible monitored visitation. The father of B.A. and J.A. was authorized at least 10 hours of unmonitored visitation.

The combined jurisdiction and disposition hearing was held over several dates: May 29–30, June 5, and July 9, 2024.

The Jurisdiction and Disposition Report dated May 24 included a report of SSA's interviews with the Minors. A.A. reported that she had been participating in therapy at school but stopped in December 2023. She was not ready to visit Mother in person, but she might be open to weekly phone calls and would be open to receiving letters. She wanted to live with her half siblings and did not want to go back home with Mother. B.A. and J.A. stated they had not participated in therapy before. They did not want to visit or have calls with Mother, but they would receive letters from her. They did not want to return to Mother and instead wanted to live with their father.

At the May 29 hearing, Mother testified that she sometimes yelled at the Minors but never called them dumb, stupid, or useless. She acknowledged hitting A.A. and J.A. with a slipper to discipline them, but she denied hitting any of them with a belt. She also disciplines them by taking away their phones. She denied telling them to lie to the social worker, threating to hit them, or threatening B.A. and J.A. that they would not be allowed to speak to their father. Mother testified that, once when she was ironing, she accidentally pulled the cord which caused the iron to fall onto and burn B.A., who at the time was one or two years old.

The investigating social worker also testified to the Minors' reports of Mother hitting them with a belt or slipper, Mother locking A.A.— while unclothed—outside the home for 20 minutes, and J.A. being called a little girl. An Addendum Report dated June 5 included the new claim that, once in 2022, Mother had made an unclothed A.A. go outside the home on the patio "for an unknown amount of time."

On June 5, over Mother's objection, the juvenile court released B.A. and J.A. into the care of their father in Georgia. The court also authorized, over Mother's objection, a 29-day visit for A.A. to stay in Georgia with her half siblings and their father. A.A.'s visit was later approved for June 19 to July 18. Mother's counsel noted that Minors "are refusing visitation" and asked that they receive referrals for individual therapy with a licensed therapist. The court granted the request for therapy and authorized supervised video visits between Mother and the Minors.

An Addendum Report was filed for the July 9 hearing. The social worker reported that, at an in-person goodbye visit on June 7, Mother hugged J.A. and whispered, "'You don't love me anymore? I love and miss you.'" J.A. began to cry. B.A. also began to cry when talking to Mother. The Minors asked to end the visit, "shar[ing] there is nothing left to talk about." On June 19, during a monitored phone call, Mother called A.A. a "cabrona."[2] On June 28, all three Minors reported they did not want to have any contact with Mother. That same day, B.A. and J.A.'s father reported that his children had been enrolled in individual counseling, although they had not yet started.

At the July 9 hearing, the investigating social worker confirmed the Minors had started therapy, although the social worker hadn't yet received a report from the therapist. Mother had completed a parent education class and was participating in anger management.

At the July 9 hearing, after hearing testimony and argument, the juvenile court sustained the petition under section 300, subdivisions (b), (c), against Mother, and section 300, subdivision (g), against A.A.'s alleged

---

[2] According to the respondent's brief, "cabrona" means "bitch" in Spanish.

father. The court approved the case plan included in the July 9 Addendum Report and incorporated it into the order by reference. The Minors were ordered removed from Mother. As to B.A. and J.A., custody was to remain vested with their father in Georgia under family maintenance supervision. A.A. was ordered to return to California and reside with her previous foster parents pending the results of the ICPC (Interstate Compact for the Placement of Children) for placement in Georgia with her half siblings. As to A.A., family reunification services were ordered for Mother and the matter was continued for a six-month review hearing.

The juvenile court permitted Mother eight hours of monitored visitation, including telephonic and Facetime communication, with the Minors' input. The court later clarified that it wasn't "giving the children the ability to veto visits," only that they "wouldn't be forced physically to go to the visits." Mother's counsel responded: "This is my concern is that there's been no contact absent the goodbye visit. I know A[.A.] had a few other visits as well, but my concern is that at this point, I can see the writing on the wall. And at this point, the prospects of reunification, I would say, are slim based upon the children all refusing to have any contact with the Mother at this time. And that's the reason why I'm objecting to them having input as I foresee that, inevitably, there will not be any contact between the children and their mother." Mother timely appealed.

In her reply brief on appeal, Mother advised that while the appeal was pending the juvenile court terminated jurisdiction as to B.A. and J.A. We directed the parties to submit letter briefs addressing this new development and attaching documentation of the termination. In response, Mother filed a request for judicial notice of the court's minute order dated January 6, 2025, terminating proceedings as to B.A. SSA filed a letter brief

7

attaching a similar order dated that same day, terminating proceedings as to J.A.[3] In its letter brief, SSA argues these orders render the appeals moot as to B.A. and J.A. and therefore subject to dismissal.

A few weeks after submission of the matter, SSA filed a motion to vacate submission, a request for judicial notice of the February 6, 2025, findings and orders from the six-month review hearing for A.A. and the minute order from that hearing, and a motion to dismiss the entire appeal as moot. Mother does not oppose the request for judicial notice,[4] but she argues the appeal concerning A.A. is not moot because this court can still grant her effective relief.

## DISCUSSION

Mother challenges the disposition order and contends substantial evidence does not support the juvenile court's finding that reasonable services had been provided to her. Specifically, she argues the case plan did not include services or a specific therapy plan to address the Minors' refusal to visit her.

## I.

### THE APPEALS CONCERNING B.A. AND J.A.

As to B.A. and J.A., SSA contends the appeal is moot and subject to dismissal because the juvenile court terminated jurisdiction during this appeal. We agree.

---

[3] We take judicial notice of the January 6, 2025, minute orders concerning B.A. and J.A. (Evid. Code, §§ 452, subd. (d), 459.)

[4] We take judicial notice of the February 6, 2025, orders concerning A.A. (Evid. Code, §§ 452, subd. (d), 459.)

"An order terminating juvenile court jurisdiction generally renders an appeal from an earlier order moot." (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 163.) "However, dismissal of a dependency appeal for mootness following termination of jurisdiction 'is not automatic, but "must be decided on a case-by-case basis."'" (*Ibid.*)

"A case becomes moot when events '"render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him [or her] any effect[ive] relief."' [Citation.] For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.* (2023) 14 Cal.5th 266, 276.) "Whether or not a parent has demonstrated a specific legal or practical consequence that would be avoided upon reversal of the jurisdictional findings is what determines whether the case is moot or not moot." (*Id.* at p. 283.) When a parent has made such a showing, "the case is not moot, and merits review is required. When a parent has not made such a showing, the case is moot, but the court has discretion to decide the merits nevertheless." (*Ibid.*)

"Even when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute. [Citation.] As a rule, courts will generally exercise their discretion to review a moot case when 'the case presents an issue of broad public interest that is likely to recur,' 'when there may be a recurrence of the controversy between the parties,' or 'when a material question remains for the court's determination.'" (*In re D.P., supra,* 14 Cal.5th at p. 282.)

Here, Mother does not complain of an ongoing harm that is redressable in the present appeal. Her reply brief addressed only A.A., suggesting she had abandoned her appeal as to B.A. and J.A. Mother also

9

fails to identify what effective relief we may offer that "'can have a practical, tangible impact on [her] conduct or legal status.'" (*In re D.P., supra*, 14 Cal.5th at p. 277.) Mother thus "has not demonstrated a specific legal or practical consequence that would be avoided upon reversal of the jurisdictional findings." (*Id.* at p. 273.)

Although we invited the parties to address whether and to what extent jurisdiction had been terminated, and its effect, if any, on the issues to be decided in this appeal, Mother filed only a request for judicial notice of the January 6, 2025, termination order. Significantly, she did not ask us to decide any issues on appeal as to B.A. or J.A., notwithstanding the fact that jurisdiction had been terminated. This appeal does not appear to present circumstances that generally warrant discretionary review of a moot case, such as a broad public interest that is likely to recur, the likelihood of a recurrence of the controversy between the parties, or a material question that remains for the court's determination. (See *In re D.P., supra*, 14 Cal.5th at p. 282.) For these reasons, we decline to exercise our discretion to decide the merits of the moot appeal as to B.A. and J.A.

## II.

### THE APPEAL CONCERNING A.A.

As to A.A., SSA contends the appeal is moot because Mother stipulated at the February 6, 2025, hearing that reasonable services were provided to her and, in any event, Mother forfeited this challenge by failing to object to the order in the juvenile court. We need not resolve the mootness issue as to A.A. because, even if moot, we have the discretion to reach the merits of the appeal. (See *In re D.P., supra*, 14 Cal.5th at p. 276.) We do so here because jurisdiction has not been terminated as to A.A. But in reaching

10

the merits, we agree with SSA's latter contention that Mother forfeited the issue by failing to object below.

The "failure to object to a disposition order on a specific ground generally forfeits a parent's right to pursue that issue on appeal." (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 345; *In re S.B.* (2004) 32 Cal.4th 1287, 1293 & fn. 2.) "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*In re S.B.*, at p. 1293.) Although a reviewing court has the discretion to excuse such forfeiture, it should exercise the discretion "rarely and only in cases presenting an important legal issue." (*Ibid.*)

Here, although Mother's counsel lamented that "the prospects of reunification . . . [were] slim based upon the children all refusing to have any contact with the Mother at this time," his only objection was to the Minors "having input" on visitation. Mother never objected to any other portion of the case plan, nor did she ask for more specific services. Accordingly, Mother forfeited her challenge to that order on appeal. We decline to exercise our discretion to excuse the forfeiture because there is no showing this claim involves an important legal issue. (See *In re S.B.*, *supra*, 32 Cal.4th at p. 1293.) The claim instead presents an issue of the juvenile court's exercise of its well-established "'broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly.'" (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 186.)

Even if we were to consider Mother's forfeited argument, we would have rejected it on the merits. Mother complains that "[t]he case plan had no mention of conjoint counseling or therapeutic visitation." She is incorrect. The case plan recommended the following for both Mother and A.A.: "You will participate in *individual, conjoint, family, and/or group*

11

*therapy* with a therapist approved by [SSA] to address issues in the petition. Counseling is to continue until such time as the assigned social worker determines in consultation with the therapist that the goals of therapy have been accomplished and therapy is no longer necessary. Frequency of counseling is to be determined by the assigned social worker in consultation with the therapist." (Italics added.) Mother cites no authority—nor are we aware of any—that requires a case plan to include further specifics on the type of therapy to be provided. As contemplated by the case plan, the precise nature or type of therapy would seem most appropriately decided by the therapist after consultation with the participants.

## DISPOSITION

The requests for judicial notice are granted. SSA's motion to dismiss the appeal as moot is granted as to B.A. and J.A. and denied as to A.A. The juvenile court's order as to A.A. is affirmed.


DELANEY, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


GOODING, J.

12