Filed 3/6/23  In re X.O. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re X.O., A Person Coming Under the Juvenile Court Law. | B317932 |
| _____ | (Los Angeles County Super. Ct. No. 17CCJP01779C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| C.D., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

The juvenile court assumed dependency jurisdiction over X.O. (Minor) when she was less than a year old. The court found true allegations that Minor was at risk of harm from C.D.'s (Mother's) history of substance abuse and ordered Mother to submit to random drug testing. Mother appeals the jurisdiction finding and associated disposition order, asking us to decide whether the former was supported by substantial evidence and whether the latter was an abuse of discretion.

## I.  BACKGROUND

### A.  *The Dependency Investigation and Petition*

In December 2020, two days after her premature birth, the Los Angeles County Department of Children and Family Services (the Department) opened an investigation into Minor's well-being due to concerns over Mother's substance abuse. The Department's concerns arose not from Mother's toxicology results at the time of Minor's birth, which were negative, but from Mother's prior child welfare history.[1]

---

[1]     Approximately three years earlier, Minor's half-sister K.D. was declared a dependent of the juvenile court due to a sustained allegation of general neglect arising out of Mother's failure to make a plan for the child's safety after Mother was incarcerated with an unknown release date. In that prior proceeding, Mother admitted she had a long history of marijuana use (beginning when she was 14 years old) and used marijuana during her pregnancy with K.D.; Mother was ordered to drug test as part of her reunification plan but did not comply. A year after assuming jurisdiction over K.D., the juvenile court also assumed jurisdiction over Minor's half-brother W.P. due to sustained allegations of substance abuse by Mother and the child's father.

After being released from the hospital following Minor's birth, Mother was interviewed at home by a Department social worker.  Mother denied any current drug use, advised she stopped using marijuana six months earlier after learning she was pregnant with Minor, and agreed to submit to a drug test following the interview.  The results from the test were inconclusive because the sample was diluted.  During a follow-up telephone interview with the social worker, Mother could not offer an explanation for the diluted test result but re-affirmed she was not using any drugs, including marijuana, and was willing to test as needed.  Following a missed drug test, Mother agreed during a subsequent home visit to submit to an on-demand drug test later that same day, the results of which were negative.

The social worker also interviewed Minor's father D.O. (Father), the maternal grandmother, and the paternal grandmother with whom the family was then living.  Father denied that either he or Mother used drugs.  After the results from a drug test for Father were initially found inconclusive and then revised to be positive for marijuana, he conceded he used marijuana but smoked it only outside the home.  The maternal grandmother reported Mother smoked marijuana in the past but she no longer used marijuana.  The paternal grandmother reported she did not suspect drug use by either of Minor's parents.

---

At the time of W.P.'s birth, Mother tested positive for opioids and W.P.'s meconium tested positive for marijuana.  Ultimately, Mother failed to reunite with both of Minor's half-siblings and the maternal grandmother was appointed their legal guardian.

3

Although the Department found Minor to be in good health and well-taken care of and recommended she remain in her parents' care, it nonetheless assessed her to be at "high" risk of abuse or neglect.

In February 2021, the Department filed a two count petition asking the juvenile court to assume jurisdiction over Minor under Welfare and Institutions Code section 300, subdivisions (b)(1) and (j).[2]  The petition alleged in the subdivision (b) count that Minor was at substantial risk of suffering physical harm or illness due to her young age and Mother's history of abusing opioids and marijuana.  The subdivision (j) count asserted Minor was at risk of harm in light of Mother's inability to care for W.P. as a result of her history of substance abuse.  At the detention hearing, the court found the Department had made a prima facie case for dependency jurisdiction, released Minor into her parents' care under the Department's supervision, and ordered various family preservation services for both parents, including drug testing.

### B.    Jurisdiction and Disposition

In advance of the jurisdiction hearing, a Department investigator conducted a telephone interview of Mother during which she re-affirmed she was not currently using any

---

[2]    Not long after the filing of the dependency petition, the Department learned there had been domestic violence between Mother and Father (in Minor's presence) that left Mother with a black eye.  No amended, supplemental, or subsequent dependency petition was filed as a result of this incident.

Undesignated statutory references in this opinion are to the Welfare and Institutions Code.

4

substances.  After Mother stated she was not currently undergoing any drug testing but was willing to begin, the investigator asked if she would submit to an on-demand test later that day.  After repeatedly confirming Mother's availability and commitment to test that day at a particular site, the investigator submitted a referral to the test facility.  Two hours later, Mother telephoned the investigator and advised she would not be able to test due to a lack of transportation.

After Mother missed this scheduled drug test, the Department revised its position concerning the dependency proceedings.  The Department initially recommended the dependency petition be dismissed on the condition that Mother and Father submit to weekly drug testing (among other things), but the Department now urged the juvenile court to sustain the petition as alleged.

In view of Mother's missed test and the Department's renewed position that dependency jurisdiction was warranted, the juvenile court continued the jurisdiction hearing.  Because Minor was a newborn, the court ordered her parents to provide four clean consecutive drug tests before a conditional dismissal of the dependency petition could be re-offered as a resolution of the proceedings.  Between April 8 and May 7, 2021, Mother missed each of her five scheduled drug tests.

In May 2021, the juvenile court continued the jurisdiction hearing once more to allow the Department to investigate a report of Mother moving out of the family home due to domestic violence between her and Father.  At the same time, the court ordered Mother and Father to submit to drug testing as a condition of Minor's continued release into their care.

Between May 12 and June 21, 2021, Mother was a "no show" at the seven tests scheduled during that period. At a hearing on July 14, 2021, the juvenile court admonished Mother that she needed to submit to drug testing and test negative as a condition of Minor's continued release into her custody and care. Despite the court's admonition, Mother continued to miss scheduled drug tests. Between July 1 and August 31, 2021, she missed nine out of 10 scheduled tests. The results from the one completed test were negative for the presence of drugs.

After Mother moved out of the home where she had been living, the paternal grandmother reported concerns to the Department about both parents and their care of Minor. Among other things, the paternal grandmother said Mother dropped off Minor at the paternal grandmother's home one weekend inadequately dressed (no pants or blanket covering his legs) and without adequate provisions (food or clothing). In addition, the paternal grandmother advised Mother had dropped Minor off with her "at inappropriate times, around 1 am," was "often" leaving Minor in the care of friends or others, and was not being truthful to the Department.

In the fall of 2021, the juvenile court reminded Mother once more of the need to submit to drug testing and, to facilitate her testing, it ordered the Department to provide transportation assistance and find a more convenient testing site, which the Department did.[3] Despite these measures, Mother was still a "no

---

[3] The request for transportation assistance to facilitate drug testing was made by Mother's counsel at a hearing Mother did not attend. Mother subsequently advised the Department that she did not need transportation assistance because she did not take the bus.

show" at the five drug tests scheduled between September 9 and October 5, 2021. When asked to explain the missed tests, Mother told a Department social worker she was not testing because she had twice lost her identification card. To a Department investigator, however, Mother gave a different explanation for her missed tests: the testing center was closed. When the investigator contacted the testing facility, she was advised the center was open and had never been closed.

Although Mother missed 27 out of 28 scheduled drug tests since the filing of the petition, during that same period she completed a 12-week program for domestic violence and a 10-week parenting course, as well as individual counseling.

The juvenile court ultimately held the jurisdiction hearing in November 2021. Mother did not testify, interpose any objections to the Department's proffered evidence (its reports submitted to the court during the course of the proceedings), or offer any evidence of her own. After hearing argument from the parties, the court sustained the petition as pled. The court found jurisdiction was warranted because it was not confident Mother was "leading a sober lifestyle."

A week later, the juvenile court held a disposition hearing, at which it released Minor into her parents' care and ordered various family maintenance services, including random or on-demand drug testing for Mother. Mother did not object to the testing requirement; instead, her attorney questioned only whether the case plan should also provide for additional drug-related services. In response, the court clarified that if Mother missed a random or on-demand test or tested positive for drugs, she would not necessarily be required to complete a full drug rehabilitation program; rather, the Department would need to

seek and obtain a court order for Mother's enrollment in such a program.

## II. DISCUSSION

There is sufficient evidence that dependency jurisdiction under section 300, subdivision (j) was proper, and that obviates the need to discuss the subdivision (b)(1) basis for jurisdiction found by the juvenile court. (*In re I.J.* (2013) 56 Cal.4th 766, 773-774 (*I.J.*); accord, *In re Madison S.* (2017) 15 Cal.App.5th 308, 328-329.) Because Minor's half-brother W.P. was made a dependent of the juvenile court due to Mother's history of substance abuse, Mother was ordered to submit to drug testing following the filing of the petition on Minor's behalf. Despite being repeatedly reminded by the juvenile court of the necessity to submit to weekly drug testing, Mother managed to do so only once over the course of many months. In addition, she failed to credibly explain why she was unable to drug test on a consistent basis while simultaneously being able to complete other family preservation programs. The many missed tests and implausible explanations, combined with the prior jurisdiction finding for Minor's half-brother and evidence that Minor was not being properly cared for, adequately establishes a substantial risk of serious physical harm to Minor, who was a child of "tender years" at the time of the adjudication hearing.

As for Mother's contention that the juvenile court abused its discretion by ordering her to submit to random drug testing, she forfeited the argument by not objecting to the drug testing order during the proceedings below. The result would also be the same even if Mother had timely objected to the order: the requirement for drug testing was eminently reasonable on this record.

8

A.    *Substantial Evidence Supports the Jurisdiction Finding*

Section 300, subdivision (j), authorizes a juvenile court to assume dependency jurisdiction over a child when the following two requirements are met: "[t]he child's sibling has been abused or neglected, as defined in subdivision [(b)(1) or other subdivisions],[4] and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."  (§ 300, subd. (j).)  Section 300, subdivision (j) states courts "shall" consider the following when deciding whether to assert jurisdiction:  "the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j).)

"The broad language of [Section 300,] subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the subdivisions enumerated in subdivision (j). The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to

---

[4]    Under subdivision (b)(1), a child is a dependent child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . .[¶] [t]he failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."  (§ 300, subd. (b)(1)(A).)

9

have been abused than the court would have in the absence of that circumstance.' [Citation.]" (*I.J.*, *supra*, 56 Cal.4th at 774.)

"'In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them.'" (*In re R.T.* (2017) 3 Cal.5th 622, 633.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." (*I.J.*, *supra*, 56 Cal.4th at 773, internal quotation marks and citations omitted.)

Dependency jurisdiction over Minor was proper pursuant to subdivision (j) because it was undisputed W.P. was made a dependent of the juvenile court due to Mother's substance abuse and, as we next detail, substantial evidence supported the conclusion that Minor was at risk of being abused or neglected for the same reason.

Minor was an infant at the time of the adjudication hearing. Children of "tender years," like Minor, face "an inherent risk to their physical health and safety" if they are not adequately cared for or supervised (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824), which regular, ongoing use of marijuana can inhibit. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219-1220 [holding juvenile court was justified in assuming jurisdiction over three-month-old child in view of father's chronic use of marijuana]; see also *id.* at 1219 [children six years old or younger are generally considered to be of "tender years"].) There was evidence here from the paternal grandmother that Mother

was indeed neglecting to care for Minor properly: most prominently, the 1:00 AM drop-offs and the drop-off without proper clothes or food, but also the statements regarding Mother frequently leaving the young child in the care of others. (See, e.g., *In re Natalie A.* (2015) 243 Cal.App.4th 178, 185 [neglect is "one of the most salient manifestations of parental substance abuse"] (*Natalie A.*).)

In addition, despite being repeatedly advised by the juvenile court of the importance of submitting to drug testing, Mother missed 27 out of 28 scheduled drug tests. Mother's proffered explanations for her missed drug tests were either suspicious or demonstrably false. The juvenile court could reasonably infer Mother was acting deliberately to avoid producing a positive test result. (See, e.g., *In re Noah G.* (2016) 247 Cal.App.4th 1292, 1303-1304 [where mother missed all 11 drug tests after testing positive, "the juvenile court could reasonably conclude that common sense suggests a parent who consistently fails to appear for drug tests does so because of a consciousness of guilt"], disapproved of on other grounds by *In re Caden C.* (2021) 11 Cal.5th 614, 637, fn. 6; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384 [mother's history of marijuana and methamphetamine abuse, her refusal to take drug tests, and her provision of diluted samples when she did appear at a facility to test constituted substantial evidence supporting dependency jurisdiction].) Mother also had a history of testing noncompliance and substance abuse in dependency proceedings concerning Minor's half-siblings, who were just two years (W.P.) and three years (K.D.) older than Minor.

The evidence was accordingly sufficient to exercise dependency jurisdiction under section 300, subdivision (j).

Mother's reliance on several cases in which reviewing courts held there was not a sufficient link between a parent's substance abuse and a risk to a child's safety under section 300, subdivision (b) (e.g., *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003-1005 (*Destiny S.*) [mother's drug use, without any indication of child abuse or neglect, insufficient to support jurisdiction over 11-year-old]; *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 727 (*Rebecca C.*) [mother's history of substance abuse insufficient to support jurisdiction over a teenage daughter]), does nothing to undermine this conclusion.[5]  Here we discuss a jurisdiction finding under section 300, subdivision (j), which affords juvenile courts greater latitude.  (*I.J.*, *supra*, 56 Cal.4th at 774.)  Additionally, we are concerned in this case with a very young child (Minor was 10 months old at the time of the jurisdiction hearing)—not, for instance, the pre-teen and teen children at issue in *Destiny S.* and *Rebecca C.*  Further, as already detailed, there *is* evidence of parental neglect in this case, as related by the paternal grandmother.

---

[5]     Mother's reliance on *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322 (*Jennifer A.*) is similarly unavailing.  In that case, the Court of Appeal held a mother's missed drug tests, without more, were not substantial evidence of a risk of harm to her two children, one of whom was an infant at the time dependency proceedings were inaugurated.  (*Id.* at 1326, 1346.)  The mother in *Jennifer A.* missed nine drug tests, but completed "about 84 drug-free tests" over the course of 11 months.  (*Id.* at 1343.)  In contrast, over the course of nine months, Mother completed only one scheduled test while missing 27.

B.  *Mother Forfeited Her Challenge to the Random Drug Testing Order and the Challenge Is Not Well Taken Regardless*

As a general rule, the failure to object in the juvenile court forfeits a parent's right to pursue an issue on appeal.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 & fn. 2 (*S.B.*); accord, *In re N.O.* (2019) 31 Cal.App.5th 899, 935 ["'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court.  [Citations.]  Forfeiture . . . applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings'"].)  Although an appellate court has the discretion to excuse such forfeiture, it should do so "rarely and only in cases presenting an important legal issue."  (*S.B.*, *supra*, at 1293.)

Here, Mother did not object to the juvenile court's dispositional order for random/on-demand drug testing; her attorney merely questioned whether Mother's case plan should also include a full rehabilitation program.  As a result, Mother forfeited her challenge to that order on appeal.

Even if Mother's argument had not been forfeited, it still lacks merit.  "If a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child . . . ." (§ 362, subd. (a).)  "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (§ 362, subd. (d).)  "'The juvenile court has broad discretion to determine what would best

13

serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. [Citations.]'" (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.) On appeal, the court's determination of what is in the child's best interests cannot be reversed absent a "'clear abuse of discretion.' [Citation.]" (*Ibid*.; accord, *In re D.P.* (2020) 44 Cal.App.5th 1058, 1071.)

In view of the sustained allegations that gave rise to the juvenile court's exercise of dependency jurisdiction, namely Mother's history of substance abuse, the dispositional order directing Mother to submit to random/on-demand drug testing was both reasonable and designed to eliminate conditions that led to the court's exercise of dependency jurisdiction. (*Natalie A.*, *supra*, 243 Cal.App.4th at 186-187 [affirming dispositional order ordering father to participate in drug testing and a treatment program because "the evidence established that father's marijuana abuse posed a substantial risk to the children in light of their very young ages. And, while father continues to deny he currently uses marijuana, he has repeatedly failed to submit to a drug test or to complete treatment for his past and current substance abuse issues. On this record, the juvenile court reasonably concluded that drug testing and treatment programs were necessary to eliminate the conditions that led to the children's dependency status"].)

## DISPOSITION

The jurisdiction findings and disposition order are affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


KIM, J.