Filed 1/25/24  In re Abel C. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ABEL C., <br><br> a Person Coming Under the Juvenile Court Law. | B323785 <br><br> (Los Angeles County <br> Super. Ct. No. 17CCJP01134B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>    Plaintiff and Respondent, <br><br>    v. <br><br> M.O. and G.C., <br><br>    Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Commissioner.  Dismissed in part and Affirmed in part.

Emery El Habiby, by appointment of the Court of Appeal, for Defendant and Appellant M.O.

Richard L. Knight, by appointment of the Court of Appeal, for Defendant and Appellant G.C.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

**INTRODUCTION**

M.O. (mother) and G.C. (father) have one child together, Abel C. (born July 2016). The Los Angeles County Department of Children and Family Services (DCFS) filed a dependency petition on behalf of Abel, which was sustained by the juvenile court under Welfare and Institutions Code section 300, subdivision (b)(1).[1] Mother appeals the jurisdictional findings and dispositional orders. In addition, she challenges DCFS's compliance with the "initial duty to inquire" under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California statutes (§ 224 et seq.). Father also filed an appeal challenging compliance under ICWA. Mother and father join the arguments contained in each other's briefs to the extent they are beneficial. (Cal. Rules of Court, rule 8.200(a)(5).)

While the appeal was pending, the juvenile court ordered Abel placed in father's custody. In light of this change in circumstance, we dismiss mother's and father's ICWA challenge as moot. Because we conclude the jurisdictional finding as to count b-1 is supported by substantial evidence, we decline to exercise our discretion to review the remaining jurisdictional findings. We further conclude that mother forfeited her right to challenge the dispositional orders. Accordingly, we partially dismiss the appeal and otherwise affirm the orders below.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

**DISCUSSION**

I.    *ICWA*

Mother and father contend that DCFS failed to fulfill its ICWA duty of initial inquiry by not interviewing extended family members about Abel's possible Indian ancestry.  In response, DCFS contends this issue is now moot.  Mother and father did not file a reply brief to challenge that contention.

After filing their notices of appeal, the juvenile court placed Abel in father's custody.  Under ICWA, "[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking *the foster care placement of, or termination of parental rights to*, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe."  (25 U.S.C. § 1912(a), italics added; see also 25 C.F.R. § 23.11 [notice requirements when foster placement or termination of parental rights sought].)

This provision has been interpreted to mean that ICWA notice requirements do not apply where a child is removed from one parent and placed with another.  (Cf. *In re K.L.* (2018) 27 Cal.App.5th 332, 336–338 [ICWA did not apply where minor was removed from mother and placed with "presumed" father; by its terms "foster care" does not include placement with legal parent]; *In re M.R.* (2017) 7 Cal.App.5th 886, 904 ["ICWA and its attendant notice requirements do not apply to a proceeding in which a dependent child is removed from one parent and placed with another"]; *In re Alexis H.* (2005) 132 Cal.App.4th 11, 14 [noting that "[b]y its own terms, the act requires notice only when child welfare authorities seek permanent foster care or termination of parental rights; it does not require notice *anytime* a child of possible or actual Native American descent is involved in a

dependency proceeding"]; *In re J.B.* (2009) 178 Cal.App.4th 751, 758 [same].) Because Abel is now placed with father, the ICWA challenge is moot.

We note that this proceeding is ongoing and should Abel again be removed from father's custody, initial inquiry under ICWA would be triggered anew. (*In re A.T.* (2021) 63 Cal.App.5th 267, 274–275; see also § 224.3, subds. (a), (b) [courts and child welfare agencies have an affirmative and continuing duty of inquiry and notice].) At this point, however, an issuance of a limited remand for compliance with ICWA's inquiry requirements (assuming there was non-compliance) would be an empty formality and waste of judicial resources. (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054.) We expect that if DCFS contemplates any additional action that might lead to foster care or adoption, it will be diligent in making sure there has been full compliance with ICWA.

## II.  *Jurisdictional Findings*

Mother challenges the sufficiency of the evidence as to all five of the jurisdictional findings (counts b-1 through b-5). Count b-1 alleged mother had a history of substance abuse, was a current abuser of marijuana, and had been under the influence of marijuana when caring for Abel. Count b-2 alleged mother endangered Abel when she left him home alone. Count b-3 alleged mother allowed father to reside in the home in violation of a June 21, 2021 restraining order and a June 8, 2020 juvenile dependency custody order. Count b-4 alleged father had a history of substance abuse, including methamphetamine, which rendered him unable to provide regular care for Abel. Count b-5 alleged mother had a history of mental and emotional problems, including a diagnosis of psychosis, suicidal, homicidal ideation and other problems.

4

a. *Applicable Law and Standard of Review*

The purpose of the dependency law "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2, subd. (a); see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)

Section 300, subdivision (b)(1), provides in pertinent part that a child may be declared dependent if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" as a result of "[t]he failure or inability of the child's parent . . . to adequately supervise or protect the child" or by the "inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse." A jurisdiction finding under section 300, subdivision (b)(1), requires DCFS to prove three elements: (1) the parent's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness. (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.)

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child currently needs the court's protection. (*In re N.M., supra*, at p. 165.) A parent's "'past conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002)

103 Cal.App.4th 453, 461; accord, *In re J.N.* (2021) 62 Cal.App.5th 767, 775 ["[e]vidence of past conduct may be probative of current conditions, and may assist DCFS in meeting [its burden of proof]"].)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.""" (*In re I.J., supra*, 56 Cal.4th at p. 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid.*; accord, *In re I.C.* (2018) 4 Cal.5th 869, 892.)

b. *Count b-1*

Mother argues there was insufficient evidence to support that Abel is at risk of substantial physical harm based on her history of substance abuse and current abuse of marijuana. We disagree.

Abel was previously declared a dependent based on mother's history of substance abuse, including methamphetamine, and (then) current abuse of methamphetamine, benzodiazepine, and marijuana, which rendered her incapable of taking care of (then) one-year-old Abel. Despite mother's denial of current drug use, the evidence supports a contrary finding. Mother

6

admitted to a social worker that she had consumed marijuana on two occasions since the termination of her prior dependency case. Mother disclosed that a neighbor taught her how to smoke marijuana using "the cut-off funnel of a plastic bottle, and a small bucket of water."

When interviewed by a social worker, Abel was aware mother "smokes," and he described the contraption she concocted to smoke marijuana. In April 2022, maternal grandmother witnessed mother inhaling drugs from a contraption made from an orange juice container. Paternal aunt, Abel's caregiver, believed mother was using drugs because of her aggressive behavior toward her, which included mother threatening to kill her. When maternal grandmother witnessed mother using drugs in April 2022, mother proclaimed she had "a big business" with the government, who paid her $15 million. This interaction with maternal grandmother reinforced paternal aunt's belief that mother was using drugs.

Father consistently reported to DCFS that mother continued to use drugs when he moved into the home after the prior dependency case was terminated. Mother would go into the bathroom to use methamphetamine and marijuana and would stay in there all night. He also stated mother cheated on her drug tests by using another person's urine that she would hide in "a small bottle in her vagina." Father stated mother had "other people that use drugs living in [the] home." Father reported that when mother was "high, she screams at [Abel] badly." But when she was not "high, she was really patient with him; she was a good mother." In her condition, he opined she cannot take care of Abel. Mother contends that we should disregard father's statements as he is an "unreliable witness." We decline to do so. (See *In re I.J., supra,* 56 Cal.4th at p. 773 [""issues of . . . credibility are the province of the trial court""].)

In addition, DCFS put forth evidence that mother left Abel home alone, without proper adult supervision. Mother would leave the home at night and return in the early hours the next day. DCFS also observed the home to be cluttered and mother failed to address the issue. Abel told the social worker several times that "the house is still dirty and a little messy."

The juvenile court could reasonably infer from the evidence that mother's substance abuse interfered with her ability to care for Abel. (See *In re Natalie A.* (2015) 243 Cal.App.4th 178, 185.) Therefore, we conclude substantial evidence supports the jurisdictional finding as to count b-1.

### c. *Remaining Jurisdictional Allegations*

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J., supra,* 56 Cal.4th at p. 773; *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate"].) "We nonetheless retain discretion to consider the merits of a parent's appeal [citation], and often do so when the finding '(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond

8

jurisdiction.""" (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452; see *In re Madison S.* (2017) 15 Cal.App.5th 308, 329.)

It is not appropriate to exercise that discretion here. As we discuss below, mother forfeited her right to challenge the dispositional orders. Therefore, the orders are no longer at issue on appeal. Moreover, mother's conclusory assertions (without referring to any specific finding) that the jurisdictional findings are prejudicial to her and could potentially impact the current or future dependency proceedings or "could have other consequences for [her] beyond jurisdiction" are too speculative to justify exercising discretion to review. (See, e.g., *In re I.A.* (2011) 201 Cal.App.4th 1484, 1493–1495; *In re Madison S., supra*, 15 Cal.App.5th at pp. 329–330.) Thus, we decline to review the remaining jurisdictional findings.

III.    *Dispositional Orders*

Mother challenges the juvenile court's dispositional orders. Specifically, mother contends removal of Abel from her custody was not supported by substantial evidence. She also argues that the court abused its discretion in ordering parenting classes and monitored visitation. In response, DCFS contends that mother forfeited her challenge to the dispositional orders. We agree.[2]

Mother forfeited her challenge to the removal order because she acquiesced to it during the disposition hearing. At the hearing, mother's counsel stated that mother "submits with respect to removal" as she was "homeless and unable to provide shelter for Abel." By expressly agreeing to the plan, mother acquiesced to the recommendation. (*In re Richard K.* (1994)

---

[2]    As previously noted, mother did not file a reply brief. Mother also did not preemptively raise this issue in her opening brief.

9

25 Cal.App.4th 580, 589, *id.* at p. 590 ["He who consents to an act is not wronged by it"].)  As to the parenting classes and monitored visitation, mother failed to object at the hearing and therefore forfeited her ability to raise these issues on appeal.  (*In re T.G.* (2013) 215 Cal.App.4th 1, 14 ["'[a] party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court'"]; *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"].)  Therefore, we affirm the dispositional orders.

## DISPOSITION

The challenge to ICWA compliance is dismissed.  In all other respects, the orders are affirmed.

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.

WE CONCUR:

CURREY, P. J.

COLLINS, J.

10